The People of the State of Illinois, Plaintiff-Appellee, *v.* Felton Peck, Jr., Defendant-Appellant.

(No. 56828;

First District (3rd Division)—February 21, 1974.

Charles W. Nixon, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago, for the People.

Mr. JUSTICE McGLOON delivered the opinion of the court:

Defendant, Felton B. Peck, Jr., was indicted for murder (Ill. Rev. Stat. 1969, ch. 38, secs. 9—1(a)(1), (a)(2), (a)(3)). After a jury trial in the circuit court of Cook County he was found guilty as charged and sentenced to 100 to 150 years in the penitentiary. He appeals.

Four issues are presented for review. Defendant's first contention is that the court erred in not suppressing an alleged confession where at the hearing in the motion to suppress defendant testified that police in-

duced him to give a statement by threats and a promise of immunity and the prosecution presented no evidence to rebut such testimony. His second contention is that the court erred in refusing to quash an arrest warrant and suppress the fruits of an alleged unreasonable search and seizure. His third contention is that the court erred in refusing to hold a hearing on a motion to suppress a statement allegedly made at a coroner's inquest without the benefit of *Miranda* warnings. Defendant's fourth contention is that the sentence was excessive.

We reverse and remand.

The murder took place in the late evening of December 21, 1971, in apartment 304 at 3919 South Federal Street in Chicago. The deceased, Terry Tomalak, was a visitor. Mrs. Jacqueline Mack, who lived in the apartment, identified defendant at trial as the man who stabbed the deceased in the back with a kitchen knife. She further testified that she saw defendant and two other men beat the deceased before the stabbing took place. Mrs. Mack also identified defendant in a lineup at the police station either one or two days after the incident. Patsy Taylor, a cousin of Mrs. Mack, testified as to being present in the apartment during the killing and as to her observations of the circumstances of the beating and stabbing. She identified defendant in a lineup at the police station the day after the incident.

Officer Vaisvilas of the Chicago Police Department was the arresting officer who took defendant into custody. He testified that Jacqueline Mack and Patsy Taylor had given him descriptions of defendant. He further testified that he obtained an arrest warrant from Judge Casey at 5 A.M. on the second morning after the killing. He and other officers went to the apartment of Lee Buchannan, a cousin of defendant, at 4500 South State Street, apartment 1003. Defendant was found hiding next to the bed occupied by Buchannan. After the arrest, which was affected at about 5:30 A.M., defendant was taken to police headquarters where his shoes and trousers were inventoried and later sent to the crime lab as they appeared to be blood stained. Officer Vaisvilas testified that Officers Mannion and Tidmarsh interrogated defendant at the police station somewhere between 6 A.M. and the time of the lineup, which took place before noon.

Officer Mannion, who took a two-page typed statement from defendant at the police station, testified as to its contents at trial. The witness identified the trousers and boots which defendant wore the day he was arrested, and these exhibits were later introduced into evidence over defendant's objection. The witness further testified that Officer Tidmarsh was present throughout the taking of defendant's statement.

Officer Tidmarsh of the Chicago Police Department also testified that

he was present during the taking of the statement. He gave further testimony as to its contents. At trial the statement was introduced into evidence over defendant's objections that it was illegally taken and that it was the fruit of an illegal arrest.

Scientific testimony was given at the trial relating to the cause of death, fingerprints on the kitchen knife which was recovered at the scene, and the blood type of the blood stains found on defendant's clothes and on the knife. Dr. Edward Shalgos, a pathologist, testified that the deceased died from a loss of blood as a result of multiple stab wounds in the back of the chest. Officer Sloane of the Chicago Police Department testified that he dusted the kitchen knife for latent fingerprints but found none. The knife was later admitted into evidence. Officer Vitullo, a microanalyst with the Chicago Police Department Crime Laboraory, testified that the blood type of the blood stains found on defendant's pants and from the butcher knife matched the deceased's blood type, which was type "AB". He further testified that approximately 3 to 4 percent of the population has this blood classification.

Defendant presented no evidence. The jury returned a verdict of guilty and sentence was imposed thereon.

Defendant's first contention is that the trial court erred in admitting his confession into evidence. Defendant filed a pretrial motion to suppress the written statement he made to Officer Mannion in the presence of Officer Tidmarsh. Defendant alleged that any statement he gave was obtained in violation of his *Miranda* rights and, in addition, was the result of physical or mental coercion, and was, therefore, involuntary.

At the pretrial hearing, defendant was the only witness to testify. On direct examination he testified that when he was at the police station the police told him that he had a right to remain silent. He further testified that the police did not tell him that he had a right to have a lawyer present or that one would be supplied if he had no money. He further testified that when one of the officers started to take his typewritten statement, he was advised of his rights. Defendant admitted making some of the statements contained on the pages, but maintained that he did not know he had a right to a lawyer before he signed it. He further maintained that he asked to make a phone call but that his request was granted 2 hours later.

On his direct examination defendant also gave testimony relating to his claim of coercion. He testified that before he made the statement which was transcribed, one of the police officers threatened him and made jokes that he might die. He further testified that one of the police officers told him that if he cooperated with them, they would see that he would get "cut loose". He further testified that he was pushed and

shoved into signing the statement. He stated that the police showed him a piece of paper which purported to be signed by George Horton, and which they told defendant implicated him in the killing. He further testified that the police officer told him that if he would sign the statement he would be allowed to go home.

On brief cross-examination defendant testified that he was given his rights before he made the statement which was transcribed. The prosecutor did not cross-examine defendant concerning his testimony about the threats or the promises of leniency. After cross-examination was completed, the trial court interrogated defendant about the time at which he arrived at Lee Buchannan's apartment before he was arrested. Without presenting any evidence rebutting defendant's testimony, the prosecution moved that the motion to suppress be summarily denied on the basis that defendant introduced no facts to support the allegations of his motion. The trial court denied the motion to suppress. It expressly found that as a whole defendant's testimony was unworthy of belief because his answers to the court's questions about the time of his arrival at the apartment were unsatisfactory.

Not considering the *Miranda* issue, we find that on the basis of the evidence adduced at the hearing concerning threats and promises of leniency the trial court erred in denying the motion to suppress.

■■ The prosecution has designated defendant's statement as a confession. We have examined the statement and find that it is generally incriminating. As such it should not be admitted into evidence if found to be not voluntary. (*People v. Lefler*, 38 Ill.2d 216, 230 N.E.2d 827.) A statement which is given in consideration of promises of leniency or immunity is not voluntary and not admissible in evidence. (*People v. Martorano*, 359 Ill. 258, 194 N.E. 505.) "The fact that the defendant had been fully apprised of his constitutional rights before making his statement is immaterial to the question of its voluntariness if he had been previously promised a reward for the giving of such a statement." *People v. Jones*, 8 Ill.App.3d 849, 853, 291 N.E.2d 305, 308.

■■ At the hearing on the motion the prosecution has the burden of going forward with the evidence and the burden of proving that the confession was voluntary. (Ill. Rev. Stat. 1969, ch. 38, sec. 114—11(d).) The order of proof at such hearing is largely within the discretion of the trial judge. It is only necessary that the prosecution make out a prima facie case that the confession was voluntary before defendant is required to present some evidence. *People v. Strayhorn*, 35 Ill.2d 41, 219 N.E.2d 517.

■■■ In the instant case defendant's testimony about how he would be cut loose or allowed to go home was uncontroverted. Neither of the

two police officers who were allegedly present during the taking of the written statement was called as a witness. It was improper for the trial court to disregard defendant's uncontroverted testimony. (*People v. Holick,* 337 Ill. 333, 169 N.E. 169.) The trial court's finding that defendant's testimony was unworthy of belief was based on the witness' uncertainty as to the time at which he arrived at Lee Buchannan's apartment before he was arrested, an area of inquiry which, even assumedly within the scope of permissible examination, was nevertheless collateral to the main issue of whether defendant's confession was the result of police coercion. In any event, the prosecution did not sustain its burden of proof at the hearing on the issue of voluntariness. The prosecution argues that the error, if any, was harmless. We are not prepared to so find. (See *Payne v. Arkansas,* 356 U.S. 560, 2 L.Ed.2d 975, 78 S.Ct. 844. But see *People v. Landgham,* 122 Ill.App.2d 9, 257 N.E.2d 484, *cert. denied,* 402 U.S. 911; *People v. Jenkins,* 10 Ill.App.3d 588, 295 N.E.2d 123.) Our holding requires us to reverse the judgment and remand the cause for a new trial. See *People v. Armstrong,* 51 Ill.2d 471, 282 N.E.2d 712.

Because there will be a new trial we shall briefly discuss the context in which one of defendant's remaining three contentions arose. After the prosecution had presented six witnesses during its case-in-chief defendant filed a written motion to quash the arrest warrant and to suppress the evidence which was the fruit of the alleged unreasonable search and seizure. The motion contended that new evidence concerning the arrest had emerged at trial that was not available to counsel before trial. In the motion, because much of the evidence sought to be suppressed had allegedly already been introduced at trial, defendant also requested a mistrial. The trial court denied this request for a mistrial, and denied the motion to quash the arrest warrant and suppress evidence.

In view of the fact that we are reversing the matter for a new trial defendant will have an opportunity to make a timely motion and the trial court will be able to conduct a full hearing on the motion to suppress the evidence. Accordingly, defendant's conviction is reversed and the cause remanded for a new trial.

Judgment reversed and remanded.

McNAMARA, P. J., and MEJDA, J., concur.