THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JACOBO LOPEZ, Defendant-Appellant.

First District (4th Division)   No. 81—3143

Opinion filed May 19, 1983.

John Paul Carroll, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat and Marie Quinlivan, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LINN delivered the opinion of the court:

Defendant, Jacobo Lopez, was charged by indictment with one count of rape (Ill. Rev. Stat. 1981, ch. 38, par. 11—1) and two counts of indecent liberties with a child, the first involving sexual intercourse (Ill. Rev. Stat. 1981, ch. 38, par. 11—4(1)) and the second involving lewd fondling or touching (Ill. Rev. Stat. 1981, ch. 38, par. 11—4(3)). Following a jury trial in the circuit court of Cook County, defendant was convicted on all three counts and sentenced to eight years in the Illinois Department of Corrections.

Defendant raises three claims of error on appeal: (1) his confession should have been suppressed because the State failed to produce and examine all material witnesses to each of his confessions as required by statute; (2) he should be granted a new trial because the State failed to provide the defense with a list of witnesses to all of defendant's confessions as required by statute; and (3) he was denied a fair trial because the trial court refused to allow him to have an interpreter assist him at trial.

We affirm the decision of the trial court.

FACTS

The rape victim, a niece of defendant, is a deaf-mute 12-year-old. Testifying with the aid of a sign language interpreter, she stated that on Thursday, March 26, 1981, she came home from school and began watching television with her brother, sister, and cousin. Defendant, a brother of the victim's mother, arrived and sat down to watch television with the children. When the victim went upstairs to the bathroom, defendant followed her, led her into her parents' bedroom, and directed her to remove her clothing and put on a bathrobe. Despite the child's indications of protest, defendant then unzipped the robe, removed the girl's underclothing, pushed her onto the bed, began kissing and fondling her breasts, and then put his penis into her vagina. As she struggled to push defendant away, he withdrew his penis but then began a second act of forced sexual intercourse with the girl. When defendant finally released her, he warned her not to tell anyone what had happened and then left the house.

After defendant had gone, the victim, although in pain, did not mention the attack to anyone that day. On Friday, the following day, she did tell her younger sister but was too afraid to tell her mother because "mother—father mad at me, no more live in the house, kick out." She did not tell her mother about the attack until the following Sunday.

The victim's mother did not call the police immediately to report the rape but instead called a family conference on Sunday evening to decide the proper course of action. As a result, the mother called the police on Monday morning, March 30, 1981, and told them that her brother, the victim's uncle, had raped her daughter. She and the police then took the child to the hospital for an examination. With the help of a sign language interpreter and some anatomy pictures provided by the doctor, the girl told the police about the entire incident.

Meanwhile, Sergeant O'Hara and Officer Jackson went to defendant's place of employment, U.S. Steel Company, and arrested him on charges of rape and indecent liberties with a child.

In his first conversation with the arresting officers, defendant denied raping the girl but admitted to "playing around with her." Defendant was then taken to the Fourth District police station, where he was questioned twice during the afternoon on the day of his arrest, once at 2 p.m. and once at 4:30 p.m. Detective Charles Grunhard testified that he was present during both sessions and gave defendant his *Miranda* warnings before defendant made any statement at all. Defendant said he understood his rights and then agreed to talk about the charges to Grunhard and his partner, Detective Edison, who was

also present at the 2 p.m. questioning.

At approximately 4:30 p.m. on March 30, 1981, Assistant State's Attorney Komessar completed his several-hour interview of the victim's mother in time to participate with Grunhard in the second session with defendant at the district station. Komessar identified himself to defendant as an assistant State's Attorney, explained that he was not defendant's attorney, and then advised defendant of his *Miranda* rights, which defendant again said he understood.

A short time later, court reporter Raymond Peters was called in to record defendant's statement. Komessar explained each of defendant's *Miranda* rights, and defendant responded on the record that he understood each one. He then admitted to committing indecent liberties and having sexual intercourse with his niece. After defendant's confession was transcribed, Komessar and defendant together read each question and answer aloud because defendant had some difficulty reading the typed statement although he had had no trouble understanding and responding to each question as it was asked. Defendant then initialed each page of the statement and signed the last page, which was also signed by Grunhard and Komessar.

On August 5, 1981, defendant filed a motion to suppress his confessions on the ground that they were coerced and involuntary: (1) *Miranda* warnings were not given, (2) defendant was subjected to continued questioning after he said he did not want to talk, (3) his request for an attorney was ignored, and (4) he was promised that he could go home as soon as he made a statement. At the September 16, 1981, hearing on the motion, Detective Grunhard testified that he had given defendant the required *Miranda* warnings each time they talked, that he had not said that defendant could go home as soon as he made a statement, and that although defendant had had some difficulty reading the transcription of his statement, he had displayed no lack of understanding during the questioning. Defendant himself testified that he understood spoken English better than he read written English.

On cross-examination, Grunhard admitted that he and defendant had talked about defendant's going home. Defendant had asked how long he would have to stay in the station, whereupon Grunhard had responded, "Well, after the conversation is complete and everything is completed here, and if they prefer charges against you, then later the Bond Court meets tonight and the judge at the Bond Court will set a bond for you and you will be able to go."

Defendant was the only other witness to testify at the hearing on the motion to suppress. After confirming Grunhard's testimony con-

cerning the *Miranda* warnings, his own ability to understand spoken English, and Komessar's carefully helping him review the accuracy of his written confession, defendant testified that at the time he was questioned, he did not know what the word "attorney" meant or what a State's Attorney was. However, he later admitted on cross-examination that when Komessar identified himself and explained his position as an assistant State's Attorney, defendant understood that Komessar was a lawyer who was not representing him. No further questions were asked.

At the conclusion of the testimony offered during the hearing, the trial judge reserved his ruling on the motion to suppress until defense counsel had had an opportunity to file a memorandum supporting the motion. The judge noted, however, that the only issue presented at the hearing was whether the defendant had understood his confession when he signed it.

Two weeks later, the hearing continued with defense counsel arguing (1) the inability of defendant to understand English well enough to understand his *Miranda* rights, (2) defendant's ignorance of his right to stop the questioning at any time, (3) the State's failure to provide defense counsel with the names of all witnesses to all conversations between defendant and law enforcement officials, and (4) the State's failure at the suppression hearing to call all material witnesses to defendant's confessions. The trial judge denied the motion to suppress, repeating his earlier statement that the only issue raised by the testimony was defendant's ability to understand English, and all material witnesses to that issue had been called. The judge reminded defense counsel that because a motion to suppress a confession challenges the voluntary nature of the statement, and the State had presented unrebutted evidence that the confession was voluntary, there was no reason to suppress the confession and it would be admissible at trial.

On the day of trial, October 27, 1981, defense counsel moved that defendant be allowed to have a Spanish-speaking interpreter assist him during the trial because he was not "one hundred per cent conversant in the English language." The State vigorously objected, and the trial court, noting that a decision to allow an interpreter was within the discretion of the court, denied the motion on the ground that he was convinced of defendant's ability to understand and respond to the proceedings as a result of observing the defendant during the suppression hearing.

The case then proceeded to trial. Only the State called any witnesses, presenting its case through the testimony of the victim, her

mother, one of the arresting officers, and Assistant State's Attorney Komessar. The defendant's written confession was admitted into evidence and read into the record. The jury found defendant guilty on all three charges.

At the subsequent sentencing hearing, the judge declared the indecent liberties charges to be merged into the rape charge and stated that, after balancing all pertinent factors, he found a sentence of eight years to be appropriate. Judgment was entered on that finding, and defendant appealed.

OPINION

■■ Defendant's first claim of error on appeal is that his motion to suppress his confession should have been granted because the State did not comply with the applicable statutory requirements. The statute at issue, known as the material witness rule, states in pertinent part,

"Sec. 114—11. Motion to Suppress Confession. (a) Prior to the trial of any criminal case a defendant may move to suppress as evidence any confession given by him on the ground that it was not voluntary.

(b) The motion shall be in writing and state facts showing wherein the confession is involuntary.

***

(d) The burden of going forward with the evidence and the burden of proving that a confession was voluntary shall be on the State. Objection to the failure of the State to call all material witnesses on the issue of whether the confession was voluntary must be made in the trial court." Ill. Rev. Stat. 1981, ch. 38, par. 114—11.

Defendant contends that because the State failed to meet its burden of producing and examining all material witnesses to the making of defendant's confessions, all his confessions should have been suppressed. Specifically, defendant argues that both arresting officers, any detectives assisting Grunhard during the various stages of the questioning, Assistant State's Attorney Komessar, and the court reporter should have been produced by the State at the suppression hearing; the appearance of Detective Grunhard, the only State's witness at the hearing, did not constitute sufficient compliance with the statute to render defendant's confession admissible at trial. We find no merit in defendant's argument.

Defendant correctly asserts that Illinois courts consistently have held that once the voluntary nature of a confession is called into ques-

tion by a motion to suppress, the State must produce all material witnesses to the taking of the statement or explain their absence. Noncompliance with this rule will result in reversal. (*People v. Scott* (1973), 13 Ill. App. 3d 620, 301 N.E.2d 118; see *People v. Armstrong* (1972), 51 Ill. 2d 471, 282 N.E.2d 712, and the cases cited therein.) In the instant case, defendant claims that his motion to suppress challenged all of his statements on the grounds of coercion and failure to give *Miranda* warnings. However, even a cursory examination of the record reveals that there was no evidence that either defendant's written confession or any of his prior oral statements were made involuntarily. There is nothing but a bare, unsupported allegation to that effect in the written motion to suppress.

This alleged coercion was refuted directly by the testimony of Detective Grunhard, the first witness at the suppression hearing. He stated that at each of his interviews with defendant he reminded defendant of his constitutional rights but made no promises concerning when defendant could go home. The only evidence on the issue of coercion, therefore, is the unrebutted testimony by the State establishing the voluntary nature of the confession.

At this point in the hearing, the State had met its dual burden of going forward with the evidence and proving the confession voluntary. "It is only necessary that the prosecution make out a *prima facie* case that the confession was voluntary before defendant is required to present some evidence." (*People v. Peck* (1974), 18 Ill. App. 3d 112, 115, 309 N.E.2d 346, 349, citing *People v. Strayhorn* (1966), 35 Ill. 2d 41, 219 N.E.2d 517.) Once the State makes such a *prima facie* showing, "the burden shifts to the defense to produce evidence that the confession was involuntary and reverts back to the State only upon such production by the defense." *People v. Cukojevic* (1981), 103 Ill. App. 3d 711, 719, 431 N.E.2d 1154, 1160.

The defense never produced any evidence of coercion, not even through the testimony of the defendant himself. Indeed, while testifying, defendant never mentioned the alleged promise that he could go home, any request for an attorney, or the persistence of the police questioning even after he allegedly asked them to stop. Just as a court may not ignore a defendant's uncontroverted testimony that a confession was a product of specific acts of physical or mental coercion, so it may not ignore uncontroverted testimony by the State establishing the voluntariness of a confession. To do so would be reversible error. (See *People v. Arendarczyk* (1937), 367 Ill. 534, 12 N.E.2d 2; *People v. Peck* (1974), 18 Ill. App. 3d 112, 309 N.E.2d 346.) Accordingly, we find no error in the trial court's refusal to suppress defend-

ant's confession on the ground that it was the product of coercion.

■ Defendant next argues that his written confession should have been suppressed because the State failed to comply with the material witness rule; the State never produced witnesses to prove the confession was not "fruit of the poisonous tree." The first "confession," the statement by defendant to the arresting officers, was never proved voluntary; consequently, defendant contends, "its poison spread to all of the subsequent confessions given by Jacobo Lopez ***. The police used Jacobo Lopez's first coerced confession to coerced [sic] him into making the other three confessions that day." The yawning chasm between defendant's stated logical premises and his conclusion defies analysis.

The State deals with this argument by pointing out that never, during any stage of this case, was there any evidence of coercion, much less any "exploitation of illegality." (*Wong Sun v. United States* (1963), 371 U.S. 471, 488, 9 L. Ed. 2d 441, 455, 83 S. Ct. 407, 417.) As we discussed earlier, the defendant never gave one word of testimony that any of his statements were involuntary. The State met its *prima facie* burden of proving that the written confession, the only statement by defendant introduced at trial, was voluntary; the material witness rule does not require the State to present overwhelming evidence rebutting in advance every possible theory a defendant may improvise. *People v. Strayhorn* (1965), 35 Ill. 2d 41, 219 N.E.2d 517.

If defendant wished to challenge the State's evidence by advancing a "fruit of the poisonous tree" argument, he was required to establish through testimony at the suppression hearing that his first statement was coerced. Defendant's trial attorney, who also is representing him on appeal, carefully avoided asking either witness who testified at the hearing one single question about defendant's first statement. Counsel cannot now be heard to challenge the silence of a record he intentionally caused to be silent.

The only testimony given by defendant at the suppression hearing dealt with his supposed difficulty in understanding the English language and therefore his *Miranda* rights. Illinois courts have held consistently that the material witness rule does not apply when the motion to suppress is based only on the failure to give defendant his *Miranda* warnings. (*People v. Robinson* (1980), 87 Ill. App. 3d 621, 410 N.E.2d 121; *People v. McClure* (1976), 43 Ill. App. 3d 1059, 358 N.E.2d 23; *People v. Richardson* (1974), 21 Ill. App. 3d 859, 316 N.E.2d 37.) Consequently, the trial judge was correct in his decision that the State had not violated the material witness rule and defendant's confession should not be suppressed on that ground.

■ The second reason tendered by defendant for the suppression of his confession is that it was the product of defective or nonexistent *Miranda* warnings. This argument is based on the rules for proving waiver of one's constitutional rights as set forth by the Supreme Court in *Miranda v. Arizona* (1966), 384 U.S. 436, 475, 16 L. Ed. 2d 694, 724, 86 S. Ct. 1602, 1628:

> "If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel. * * *
>   * * *
> '* * * The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver.' "

In the instant case, both the State and the defendant himself testified at the suppression hearing that *Miranda* warnings were given before all interviews held at the district police station. Although defense counsel attempted to establish that defendant did not understand the word "attorney," on cross-examination defendant stated that he knew the assistant State's Attorney was a lawyer. While the wording of the warnings given to defendant might not have been in the ideal form recommended by the Chicago police department, "[i]t is established that *Miranda* does not specify the precise language to be used in conveying the warnings and does not require a ritualistic recital of words. [Citations.] Words which convey the substance of the warnings along with the required information are sufficient." (*People v. Walters* (1979), 69 Ill. App. 3d 906, 914, 387 N.E.2d 1230, 1236.) The trial judge observed defendant and concluded that he understood English well enough to know the meaning of the *Miranda* warnings and to participate fully in all the proceedings. We find no basis to disregard the trial court's determination. Accordingly, we find defendant's waiver of his constitutional rights to have been both intelligent and knowing, and we find that no *Miranda* violation occurred.

## II

■ Defendant's second argument on appeal is that he is entitled to a new trial because the State failed to comply with the disclosure provisions of the statute governing motions to produce confessions. Section 114—10 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1981, ch. 38, par. 114—10) states in pertinent part,

"Sec. 114—10. Motion to Produce Confession. (a) On motion of a defendant in any criminal case made prior to trial the court shall order the State to furnish the defendant with a copy of any written confession made to any law enforcement officer *** and a list of the witnesses to its making and acknowledgment. If the defendant has made an oral confession a list of the witnesses to its making shall be furnished.
***

(c) No such confession shall be received in evidence which has not been furnished in compliance with subsection (a) of the Section ***."

Defendant maintains that the inaccurate, incomplete list of witnesses provided by the State did not satisfy the mandatory requirements of the statute, and therefore his confession should have been suppressed. We find defendant's argument unpersuasive.

The legislative purpose behind section 114—10 is "to provide the accused with protection against surprise, unfairness and inadequate preparation." (*People v. O'Connell* (1964), 30 Ill. 2d 603, 608, 198 N.E.2d 834, 837-38.) The record discloses that the State did provide defendant with a complete list of the witnesses to his written confession, the only one introduced at trial. The wording of the statute clearly limits its application to those confessions used as evidence at trial; even the many cases cited by defendant to support his argument for complete disclosure of all witnesses present at the making of a confession dealt with *undisclosed witnesses testifying at trial* that inculpatory statements had been made by the defendant. (30 Ill. 2d 603, 198 N.E.2d 834; *People v. Du Pree* (1962), 26 Ill. 2d 320, 186 N.E.2d 237; *People v. Rand* (1975), 29 Ill. App. 3d 873, 331 N.E.2d 15.) Clearly, no such surprise occurred here. We necessarily conclude that defendant would have us impose a mistaken version of the rule for the *production* of material witnesses found in section 114—11 of the Code of Criminal Procedure of 1963 on the rule in section 114—10 requiring the State to provide a *list* of witnesses to a confession introduced as evidence at trial. This cannot be done. Accordingly, we find no error in the trial court's refusing to suppress defendant's confession on the ground that the State violated section 114—10 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1981, ch. 38, par. 114—10).

### III

■ Defendant's final claim on appeal is that the trial court's denial of his motion for a Spanish-speaking interpreter denied him his

fourteenth amendment right to due process and his right to be present at trial. Again, we disagree.

The decision to allow an interpreter for the benefit of a defendant lies within the sound discretion of the trial judge, and his decision not to allow an interpreter will not be reversed absent a showing that lack of an interpreter deprived defendant of some basic right. (*People v. Soldat* (1965), 32 Ill. 2d 478, 207 N.E.2d 449.) In the instant case, the trial judge had ample opportunity to observe defendant during the suppression hearing. Defendant himself testified that he understood spoken English better than he could read or write it. Further, the judge noted for the record that defendant was born in Texas, was educated in American schools, served in the United States Army, and had been employed in Cook County for almost 10 years. Defense counsel's plea that his client deserved an interpreter in his "native tongue" overlooks the meaning of "native." We think it unreasonable to maintain that the native language of anyone born in Texas could be anything but English.

Finally, we take note of the timing of defendant's request for an interpreter. Defendant made no such request at the time of the suppression hearing, at which he testified without difficulty. The trial judge stated immediately before trial,

> "I think that in exercising my discretion it should be duly noted that in none of these proceedings up to this point was there ever a request or a suggestion that a translator was needed until this moment, after the jury has been selected without the use of a translator."

The only evidence of defendant's lack of facility with the English language came in his suppression hearing testimony that he did not completely understand the word "attorney" in his *Miranda* warnings. In addition to his own contradiction of this statement during cross-examination, we note that his motion to suppress specifically stated that he requested an attorney at the time of his arrest but was ignored. Accordingly, we find no error in the trial court's refusing to allow defendant to have an interpreter assist him at trial.

For all the foregoing reasons, we affirm the decision of the trial court.

Affirmed.

JOHNSON and JIGANTI, JJ., concur.