THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DARWIN ANDERSON, Defendant-Appellant.

First District (4th Division)   No. 1—97—0014

Opinion filed March 25, 1999.

HOFFMAN, J., dissenting.

Rita A. Fry, Public Defender, of Chicago (Julie A. Hull, Assistant Public Defender, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, William Toffenetti, and John M. Sheldon, Assistant State's Attorneys, of counsel), for the People.

JUSTICE WOLFSON delivered the opinion of the court:

Darwin Anderson appeals his aggravated robbery conviction. He contends police officers, not he, initiated questioning that led to his signing of a written confession, in violation of his constitutional right to the presence and advice of a lawyer. The trial court found they did not. Although we are bound to apply a manifest weight of the evidence standard to the trial court's findings, we conclude the defendant's written confession should have been suppressed.

FACTS

On January 17, 1995, a man dressed completely in navy blue entered the Quagliani Insurance Agency in Homewood around 10:30 a.m. The man spoke with Marilyn Kapes (Kapes) about insuring a car and identified himself as "Vincent" Anderson of Dolton. After a brief discussion, the man left the insurance agency, returning around 12:30 p.m., only to say he would return again. Around 2:30 p.m., the man returned, stole Kapes' diamond engagement ring, and fled in a car.

Later that day, Aaron Lake, a jewelry dealer in Harvey, purchased a one-half karat diamond solitaire ring from Darwin Anderson (Anderson).

Homewood police detectives Douglas Roberts (Roberts) and James Denman (Denman) were assigned to investigate Kapes' robbery. Two blocks from the insurance agency, Roberts and Denman found an abandoned car. The fingerprints on the car led the police to Barbara Jacobowski (Jacobowski), who in turn led them to Anderson. On March 15, 1995, Anderson, who was in custody at the Robbins police department on an unrelated charge, was brought to the Homewood police department.

On March 16, 1995, Anderson signed an inculpatory statement. Before trial, Anderson filed a motion to suppress his statement.

At the hearing on Anderson's motion, Roberts testified: On March 16 around 9:30 a.m., Roberts and Denman first met Anderson. Roberts advised Anderson of his *Miranda* rights, and Anderson indicated he understood his rights. Roberts and Denman interviewed Anderson for approximately 45 minutes, and Anderson made an inculpatory statement: "He gave us his account of implicating himself in the armed robbery \*\*\*." Roberts made notes of Anderson's confession and later used these notes to draft a written statement for Anderson to sign.

Around 1:20 p.m., Denman took Anderson to a lineup. After the lineup, Homewood police summoned assistant State's Attorneys to interview Anderson. Around 6 p.m., Assistant State's Attorney Frank Cece told Roberts and Denman that Anderson refused to speak with assistant State's Attorneys and asked to return to the lockup. Denman took Anderson back to the lockup. Several minutes later, Denman returned from the lockup, saying, "Anderson told [Denman] he [Anderson] would only talk to Homewood detectives."

Around 8:15 p.m., Roberts and Denman again spoke with Anderson for approximately 30 minutes. Roberts advised Anderson of his *Miranda* rights, and Anderson indicated he understood his rights. Roberts then gave Anderson a three-page written statement based on Roberts' notes of Anderson's first inculpatory statement that morning. Roberts offered to read the statement to Anderson, but Anderson chose to read the statement himself. Anderson initialed the *Miranda* waiver, initialed each page, and signed the last page of the statement. The prosecution presented two photographs of Anderson reading the statement.

Roberts denied he or Denman ever slapped, kicked, or punched Anderson. Roberts also denied Anderson ever complained about lack of sleep or mistreatment by Homewood police.

Denman testified: On March 16 around 9:30 a.m., Denman and Roberts first met Anderson. Roberts advised Anderson of his *Miranda* rights, and Anderson indicated he understood his rights. Denman and Roberts interviewed Anderson for approximately 45 minutes. Denman was asked if Anderson denied any involvement in the robbery: "At first, yes, he denied, not acknowledging that he was the offender, yes."

Denman again saw Anderson around 1:20 p.m., when he took Anderson to a lineup. Around 6 p.m., two assistant State's Attorneys met briefly with Anderson outside the presence of Denman and Roberts. After that meeting, Denman recalled, "State's attorney [*sic*] came out and advised that Mr. Anderson did not want to speak to them and that I could go put him in the lockup."

As Denman was walking Anderson to the lockup, Anderson initiated a conversation: "Mr. Anderson said that he didn't want to talk to the state because they put cases on him that he didn't do. And as we were going into the lockup, he said that he was still interested in talking to me and my partner." Denman returned to his office, where he informed Roberts and the assistant State's Attorneys of this conversation. Denman denied he squeezed Anderson's arm while walking to the lockup.

Around 8:15 p.m., Denman and Roberts returned to the lockup and asked Anderson if he still wished to speak with them. When Anderson agreed, the detectives took him to their office, where Roberts again advised the defendant of his *Miranda* rights. Roberts gave Anderson a written statement, which Anderson signed.

Denman denied he or Roberts ever slapped, kicked, or punched Anderson. Denman also denied Anderson complained about his treatment by the Homewood police.

Anderson testified: Anderson was interrogated by Roberts and Denman on the night of March 15 when he first arrived at the Homewood police department. In this preliminary interview, Anderson disclaimed any knowledge about the robbery.

Roberts and Denman interrogated Anderson again the following morning, March 16, telling him they had a statement from Jacobowski. Anderson again told them he knew nothing about the robbery, and he requested an attorney: "I told them no, I didn't have nothing to say. I wanted to get a lawyer. I wanted to talk to a lawyer."

Roberts and Denman questioned Anderson again around 1 or 2 p.m. and told him they found his fingerprints, as well as Jacobowski's fingerprints, on the car used in the robbery. Roberts and Denman also told Anderson Jacobowski had given a statement implicating him. Anderson said he knew nothing about the robbery and repeated his request for an attorney. The detectives told him he would have to wait: "They said the only way you get an attorney, you don't have a private one, you wait until you go to Markham ***" to receive a public defender.

When Anderson again denied any knowledge of the robbery, Denman slapped him in the ear, knocking him to the floor, and then picked him up, squeezing his neck. Anderson said Denman later "slung" him against the wall.

When assistant State's Attorneys arrived, Anderson refused to speak to them without an attorney present:

> "Because I told them I wasn't going to talk to anybody without an attorney present. I kept saying I want an attorney present.
>
> I said what they want to talk to me, they have to talk to me about after I go to Markham."

According to Anderson, Roberts was present during the assistant State's Attorneys' interview.

Anderson examined his written statement, acknowledged he had signed it, but denied he had read it. Roberts and Denman informed Anderson someone was coming for him from Markham, but they had some paperwork to finish before they could let him go. Roberts and Denman asked Anderson to initial the waiver of rights portion of the statement to acknowledge that they had given him his *Miranda* rights, and he did so. Roberts and Denman then asked him to sign the statement, telling him it was the statement by Jacobowski, which had been read to him previously by these officers, in order to acknowledge that he was aware Jacobowski had implicated him in the robbery. Anderson initialed and signed the statement without reading it because the detectives told him he would have to stay at the Homewood station another day if he delayed.

Anderson said he was not given any food from the time he was arrested by the Robbins police department on March 15 until the time he left the Homewood police department on March 16. Although Anderson had a water fountain, which was attached to the commode in his cell, he declined to drink the "nasty" water. Anderson was not given anything else to drink. Anderson did not sleep during the time he was at the Homewood station because it was cold in his cell, and he had no blanket. He acknowledged that the officers did not prevent him from sleeping. Anderson did not tell the assistant State's Attorneys about the physical mistreatment he received, but he did tell the medical technician at the county jail that he had been mistreated and his elbow was swollen.

On rebuttal, the prosecution called Denman. Denman testified that while Anderson was at the Homewood station, he made three telephone calls: one on the evening of March 15 and two on March 16. Denman, however, was present only when the defendant made one of those calls. Denman further testified Anderson was given food three times on March 16, although Denman did not see Anderson eat. Denman denied Anderson ever asked for an attorney.

Alphonso Hill, a medical technician at Cermak Health Services of Cook County, testified he conducted Anderson's medical intake on March 17. Hill said he did not observe any signs of injury or trauma to Anderson. Hill also said if Anderson had reported injuries or mistreatment by the police, Hill would have noted that in his report even if he did not observe any signs of it.

Anderson called Yvette Jones, a Cook County deputy sheriff employed by the Department of Corrections. Jones testified Anderson complained to her on one occasion of a sore arm. Jones noticed that

one of Anderson's arms appeared to be swollen, and she took him to the dispensary, where he was given an ice pack.

In denying Anderson's motion to suppress, the trial court said:
"[I]n my opinion based on the evidence presented to me and after resolving the issue of credibility, I am finding that the Defendant was advised of his Miranda warnings[.] That he did not ask for an attorney; that he initiated the interview after declining to speak to the assistant state's attorney."

The trial court found Anderson received food and water, was not denied sleep, and was not beaten by the detectives. The trial court concluded Anderson's statement was voluntary and denied his motion to suppress.

Before trial, Anderson also filed a motion *in limine* to bar the prosecution from using his prior convictions as evidence. The trial court reserved its ruling on this motion until Anderson decided whether he would testify.

After the State rested, Anderson indicated he would testify, and the trial court ruled that the State would be allowed to use the defendant's prior convictions for impeachment. The jury found Anderson guilty of aggravated robbery. The trial court sentenced Anderson to 12 years' imprisonment. This appeal followed.

## DECISION

■ Anderson contends the trial court erred in denying his motion to suppress the written confession he signed at about 8:15 p.m. on March 16, 1995. Anderson asserts the trial court's finding that he had not invoked his right to counsel was in error. Because issues of credibility and fact are raised in this case, we must review the trial court's denial of the defendant's motion to suppress on the manifest weight of the evidence standard. *People v. Williams*, 181 Ill. 2d 297, 309, 692 N.E.2d 1109 (1998). The State had the burden to demonstrate the defendant's *Miranda* waiver was voluntary, " 'including the necessary fact that the accused, not the police, reopened the dialog with the authorities.' " *People v. Baker*, 253 Ill. App. 3d 15, 33, 625 N.E.2d 719 (1993), quoting *Edwards v. Arizona*, 451 U.S. 477, 486 n.9, 68 L. Ed. 2d 378, 387 n.9, 101 S. Ct. 1880, 1885 n.9 (1981).

■ ■ Prior to custodial interrogation, a criminal suspect must be informed he has the right to remain silent and the right to have an attorney present during questioning. *Miranda v. Arizona*, 384 U.S. 436, 444, 16 L. Ed. 2d 694, 706-07, 86 S. Ct. 1602, 1612 (1966). "[A]n accused, *** having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused

himself initiates further communications, exchanges, or conversations with the police." *Edwards*, 451 U.S. at 484-85, 68 L. Ed. 2d at 386, 101 S. Ct. at 1884-85; *People v. Ravellette*, 263 Ill. App. 3d 906, 912, 636 N.E.2d 105 (1994). To help determine whether the suspect has waived his right to counsel, the supreme court in *Edwards* established a bright-line, two-part inquiry. The State must show:

> "(1) the suspect initiated further communication with the police that demonstrates a desire to discuss the criminal investigation, and (2) as a separate matter and under the particular facts and circumstances of the case, that his purported waiver was knowing and intelligent." *People v. St. Pierre*, 122 Ill. 2d 95, 112, 522 N.E.2d 61 (1988).

Accord *Baker*, 253 Ill. App. 3d at 33.

■ After the suspect invokes his right to counsel, any statement he makes as a result of police-initiated interrogation without counsel is inadmissible, even if the suspect waived his right to counsel during the police-initiated interrogation. *People v. Winsett*, 153 Ill. 2d 335, 349-50, 606 N.E.2d 1186 (1992).

■ Anderson contends the trial court's finding that he did not request an attorney was against the manifest weight of the evidence. Anderson's testimony on this issue is controverted by the detective's testimony. But Anderson also testified he requested an attorney during his brief interrogation by the assistant State's Attorneys, before he signed his written inculpatory statement. Anderson contends because the assistant State's Attorneys did not testify, the trial court was not entitled to reject his testimony that he asked for an attorney during his meeting with them. In short, Anderson argues that the evidence compels a finding that he did, in fact, invoke his right to counsel and that his subsequent written confession is inadmissible.

We agree with Anderson. The prosecution's evidence concerning Anderson's statements after he refused to talk to two assistant State's Attorneys is not believable.

The record discloses: Anderson arrived at the Homewood police department on the evening of March 15, 1995. The next day, March 16, around 6 p.m., Anderson told two assistant State's Attorneys he did not want to talk to them. His testimony about that stands uncontroverted:

> "Because I told them I wasn't going to talk to anybody without an attorney present. I kept saying I want an attorney present.
>
> I said what they want to talk to me, they have to talk to me about after I go to Markham."

No assistant State's Attorney was called as a witness in this case. Anderson's testimony in this matter is reasonable. We, therefore, take

the defendant's testimony as true. See *People v. Peck*, 18 Ill. App. 3d 112, 116, 309 N.E.2d 346 (1974) ("It was improper for the trial court to disregard defendant's uncontroverted testimony"); accord *People v. Holick*, 337 Ill. 333, 338, 169 N.E. 169 (1929); *People v. Jones*, 184 Ill. App. 3d 412, 428, 541 N.E.2d 132 (1989); *People v. Lopez*, 114 Ill. App. 3d 1018, 1024, 449 N.E.2d 927 (1983); *People v. Rhoads*, 73 Ill. App. 3d 288, 308-09, 391 N.E.2d 512 (1979); *People v. Mrozek*, 52 Ill. App. 3d 500, 508, 367 N.E.2d 783 (1977); *People v. McClure*, 43 Ill. App. 3d 1059, 1061-62, 358 N.E.2d 23 (1976). See *Haynes v. Washington*, 373 U.S. 503, 10 L. Ed. 2d 513, 83 S. Ct. 1336 (1963).

The detectives testified one of the assistant State's Attorneys told them to take Anderson back to his cell. According to Denman, as he and Anderson walked to the lockup, Anderson said, without prompting, he would be willing to talk to police officers, just not State's Attorneys. After this surprising disclosure around 6 p.m., the detectives returned Anderson to his cell and left him there for more than two hours, giving him time to mull over his decision to answer questions.

According to both Roberts and Denman, the police resumed their interrogation around 8:15 p.m., at which time they secured Anderson's signature on a written inculpatory statement. The detectives denied they knew Anderson told the assistant State's Attorneys he wanted counsel. That testimony makes no sense if we accept Anderson's uncontradicted statement he told the assistant State's Attorneys he wanted a lawyer before he would say anything. An assistant State's Attorney who did not relay to the police a defendant's assertion of his right to counsel would commit serious misconduct.

We find the detectives reinitiated their interrogation around 8:15 p.m., about two hours after Anderson said he would not make a statement unless he had a lawyer. Under *Edwards*, Anderson's written statement must be suppressed. Because this statement was a large part of the prosecution's case at trial, we remand for a new trial.

Our decision today is not a deprecation of the salutary manifest weight of the evidence standard. We do not second-guess the trial court when it determines factual matters. On the other hand, the manifest weight standard is not a rubber stamp. It does not require mindless acceptance in the reviewing court. It is not our desire to usurp the role of the trial judge as fact finder. It is our desire to provide a reminder that credulity has its limits. We need not abdicate our responsibility to examine factual findings with a view toward determining whether "the opposite conclusion is clearly evident." *Launius v. Board of Fire & Police Commissioners*, 151 Ill. 2d 419, 427, 603 N.E.2d 477 (1992). In this case, we find the opposite conclusion is clearly evident.

While Anderson does not ask us to suppress his 9:30 a.m. oral statement, we note an apparent conflict between Roberts and Denman concerning that statement. In discussing Anderson's first interrogation, Roberts testified, "[Anderson] gave us his account of implicating himself in the armed robbery." However, in discussing this same interrogation, Denman testified: "At first, yes, [Anderson] denied, not acknowledging that he was the offender, yes." Neither at the suppression hearing nor at trial did Denman testify about the contents of Anderson's purportedly incriminating statement at the first interrogation, which formed the basis for the written statement Roberts said he drafted from his notes.

Anderson also contends the trial court erred in concluding his confession was voluntary. Here, we disagree.

■ When determining whether a defendant's confession was voluntarily made, the court must look to the totality of the circumstances surrounding the confession and consider factors such as the defendant's age, education level, and intelligence; the length of the detention and duration of questioning; whether he was advised of his constitutional rights; and whether he was physically mistreated. *People v. Brown*, 169 Ill. 2d 132, 144, 661 N.E.2d 287 (1996). We will not disturb the trial court's determination regarding the voluntariness of a statement unless it is contrary to the manifest weight of the evidence. *People v. Ramey*, 152 Ill. 2d 41, 58, 604 N.E.2d 275 (1992).

■ The trial court must resolve conflicts between the defendant's testimony and that of the other witnesses. *Brown*, 169 Ill. 2d at 150. Having heard the testimony and observed the demeanor of the witnesses, the trial court here determined Anderson was not physically mistreated or denied food, drink, sleep, or telephone calls and he did not sign the statement without having read it. We cannot say that these factual findings, or the trial court's conclusion that the defendant's confession was voluntary, were against the manifest weight of the evidence.

Finally, we do not determine whether the trial court erred in admitting Anderson's two prior convictions as impeachment evidence. On remand, the trial court presumably will have another chance to decide this question.

## CONCLUSION

For the reasons stated, we reverse the trial court's order denying suppression of Anderson's written statement. Because there would be sufficient evidence to support a guilty verdict without the statement,

we reverse Anderson's conviction and remand the cause for a new trial.

Reversed and remanded.

HALL, J., concurs.

JUSTICE HOFFMAN, dissenting:
In reaching its conclusion, the majority professes: "We do not second-guess the trial court when it determines factual matters." 303 Ill. App. 3d at 1057. Unfortunately, that is exactly what the majority has done in this case. Consequently, I dissent.

The defendant testified that he told the assistant State's Attorneys that he "wasn't going to talk to anyone without an attorney present." Accepting that testimony as true for the sake of analysis only, I still find no basis to suppress the defendant's written statement.

According to Detective Denman, after the defendant refused to talk to the assistant State's Attorneys, the defendant initiated further discussion. Denman testified that the defendant stated "he was still interested in talking to me and my partner." The defendant's testimony disputed Denman's account. The trial judge believed Denman.

The majority asserts that "[t]he prosecution's evidence concerning Anderson's statements after he refused to talk to two assistant State's Attorneys is not believable." 303 Ill. App. 3d at 1056. Specifically, the majority finds that Denman's testimony "makes no sense if we accept Anderson's uncontradicted statement that he told the assistant State's Attorneys he wanted a lawyer before he would say anything." 303 Ill. App. 3d at 1057. I, however, am at a loss to understand why Detective Denman's testimony is so patently unbelievable as to warrant invading the province of the trial court in resolving conflicts in testimony.

Denman testified that the defendant told him that "he didn't want to talk to the state because they put cases on him that he didn't do." Thus, Denman's testimony supplied the defendant's motive in refusing to talk to the assistant State's Attorneys but agreeing to talk to the police.

The exclusionary rule bars the use of a defendant's statement obtained after the defendant invokes his right to counsel, "unless the State can establish (1) the accused initiated further discussions with the police; and (2) that he knowingly and intelligently waived the right he had invoked." (Emphasis omitted.) *People v. Winsett*, 153 Ill. 2d 335, 350, 606 N.E.2d 1186 (1992); see also *Edwards v. Arizona*, 451 U.S. 477, 484-85, 68 L. Ed. 2d 378, 386, 101 S. Ct. 1880, 1884-85

(1981). After resolving the issue of credibility, the trial court in this case found that the defendant "initiated the interview after declining to speak to the assistant State's Attorney." To my mind, that puts the issue to rest.

Credibility is a determination reserved to the trial court. Unlike the majority, I am unwilling to usurp its function in that regard. Consequently, I find no basis for the suppression of the defendant's written statement.

I would affirm the defendant's conviction and sentence as I find each of his assignments of error lacking in merit.