WICKER, J.,
dissents with reasons.
_|jl agree with the majority’s finding that the trial court did not rely on the res judicata doctrine in determining whether to quash the bill of information filed against defendant, Mr. Mendoza. I respectfully dissent however because I disagree both with the majority’s interpretation and application of the Carlos burden shifting framework, and with the majority’s finding that the evidence was sufficient to find that Mr. Mendoza’s 1997 and 1999 predicate pleas were knowingly and intelligently made and therefore constitutional. I would affirm the judgment of the trial court quashing the 1997 and 1999 predicate convictions.
Addressing first the correct interpretation and application of State v. Carlos, 98-1866 (La.7/7/99), 738 So.2d 556, in enhanced DWI proceedings, Louisiana courts use the three-step Carlos burden shifting framework to determine the validity of prior DWI guilty pleas. I agree with the majority that the State met its initial burden of proving the existence of prior guilty pleas where defendant was represented by counsel.[1] With this initial burden met, the Carlos framework shifts the burden to the defendant to “produce affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea.” Carlos at 559 (emphasis added). |2Here, the majority failed to answer the proper question: did Mr. Mendoza meet his burden of production?
The majority finds, “defendant cannot meet his burden of proving an infringement of his rights or a procedural irregularity from this alleged deficiency.” (emphasis added). The majority then concludes that, “[ujnder a totality of the circumstances ... we find that defendant did not meet his burden of proving an infringement of his rights or irregularity in taking of his pleas.” (emphasis added). With these findings, the majority concluded that Mr. Mendoza did not meet a burden of persuasion.
A burden of proof includes both the burden of production and the burden of persuasion. Black’s Law DictionaRy 209 (8th ed.2004). The “burden of production” is a “party’s duty to introduce enough evidence on an issue to have the issue decided by the fact-finder, rather than decided against the party in a peremptory ruling such as a ... directed verdict.” Id. The, “burden of persuasion” is “[a] party’s duty to convince the fact-finder to view the facts in a way that favors that party.” Id. The burden of persuasion is more demanding than a burden of production because the burden of persuasion requires the burdened party to convince a fact-finder of a fact, this is not the case for the burden of production.
The majority erred by making a finding relative to the burden of persuasion rather than a burden of production. Further, the majority never defines the standard by which it demands that Mr. Mendoza prove that he suffered an infringement of his rights or a procedural irregularity. The majority leaves it unclear whether Mr. Mendoza would have to meet his burden by a preponderance of the evidence, beyond a reasonable doubt, or by some other standard. In my opinion the majority erred in this regard. The majority today imposes on Mr. Mendoza an ambiguous burden that is |3new to Louisiana law. Upon review of the record in this case, I *303 would find that Mr. Mendoza met his burden of production.
Upon this finding, I would then look to the third step of the Carlos burden shifting framework which “reverts to the State [the burden] to prove the constitutionality of the plea.” Carlos at 559. The State may meet this burden by producing a “perfect” transcript of the guilty plea colloquy. Id. “A ‘perfect’ transcript reflects ‘a voluntary, informed, and articulated waiver of the three specific rights mentioned in Boykin.'” Id. at n. 12. Anything less than a “perfect” transcript, such as a guilty plea form or minute entry, requires the trial judge to weigh the evidence submitted by both sides and determine whether the defendant’s Boykin rights were prejudiced. Id. at 559. Because in my opinion the trial court did not commit manifest error when she found that the state failed to bear its burden of proving that Mr. Mendoza made a knowing and intelligent waiver of his Boykin rights as to either the 1997 or the 1999 predicate plea, I would affirm the trial court judgment quashing the 1997 and 1999 predicate pleas.
In Boykin v. Alabama, supra, The United States Supreme Court emphasized the three federal constitutional rights which are waived by a guilty plea. Because a guilty plea waives the accused’s fundamental rights, due process requires that the plea be a voluntary and intelligent waiver of known rights in order to be valid. State v. Galliano, 396 So.2d 1288, 1290 (La.1981); State v. Vu, 02-1243, p. 9 (La.App. 5 Cir. 4/8/03), 846 So.2d 67, 72. Clearly, a defendant must understand the language used in his or her proceeding in order to make a voluntary, informed, and articulated waiver of his or her Boykin rights. See State v. Lopes, 01-1383 (La.12/7/01), 805 So.2d 124, 126 (citing United States v. Carrion (1973, C.A.1 Mass.), 488 F.2d 12, cert. denied 416 U.S. 907, 94 S.Ct. 1613, 40 L.Ed.2d 112 (1974) (The right to |4an interpreter rests most fundamentally on the notion that no defendant should face the Kafkaesque spectre of an incomprehensible ritual which may terminate in punishment.)).
When the question of whether a defendant has sufficient fluency in English arises, the court must first test the defendant’s understanding of English.[2] A hearing to determine the defendant’s ability to understand English need not be elaborate. State v. Neave, 117 Wis.2d 359, 375, 344 N.W.2d 181, 189 (1984) abrogated by State v. Koch, 175 Wis.2d 684, 499 N.W.2d 152 (1993) (citing Chang and Araujo, Interpreters for the Defense: Due Process for the Non-Englishr-Speaking Defendant, 63 Cal. L.Rev. 801, 819 (1975))[3]. Normally the court should be able to decide whether an interpreter is necessary by simply asking a few questions. Id. If the court suspects fraud, other testimony may be necessary to establish the extent of defendant’s ability to speak English. Id. In State v. *304 Lopes, 01-1383 (La.12/7/01), 805 So.2d 124, n. 8, the Louisiana Supreme Court noted that,
Because we “have no jurisprudence on this issue, we find it appropriate to reference other jurisdictions to show some of the considerations that they have taken into account at such hearings: the extent of defendant’s education in the United States; the duration and extent of the defendant’s presence in an English-speaking community; and the extent to which the defendant was able to communicate with police after arrest.[4]
The trial court’s determination of whether a defendant lacks the necessary proficiency in English will not be overturned absent an abuse of [¿¡its discretion. Scior-tino v. Seiortino, 99-3117 (La.App. 4 Cir. 11/8/00), 773 So.2d 240, 246.[5] .
If the trial court finds that the defendant’s understanding of the English language is not adequate to render him capable of understanding the nature of the proceedings and the rights being explained, the defendant has a right to an interpreter. See Kim v. Kim, 563 So.2d 529, 530 (La.App. 5 Cir.1990).[6] This constitutional right to an interpreter was recognized in State v. Lopes, 805 So.2d at 126, where the Louisiana Supreme Court explained, a “defendant’s constitutional right ... to testify in his own behalf may be meaningless if a language barrier causes him to be misunderstood or he misconstrues questions posed to him because he simply does not understand the language.”
In the 1997 proceedings, the issue of Mr. Mendoza’s English fluency clearly arose. In those proceedings, Mr. Mendoza’s attorney indicated that he wished for an interpreter, but admitted to the court that “once [Mr. Mendoza] knows what you are asking him he can answer simply....” Mr. Mendoza’s interpreter then stated, that Mr. Mendoza “can read a lot in English” and that he could “write too.” When the court directly asked Mr. Mendoza whether he could read and write in English however, Mr. Mendoza answered, “No, no. A little bit, but I talk sometimes really.” Wben the trial court directly asked Mr. Mendoza whether he understood “what was going on today,” Mr. Mendoza initially gave no response. Only at further prompting by the court did Mr. Mendoza muster his response, “Yeah. Now I understand'.” Despite this weak showing, the court found Mr. Mendoza | fiCould answer its questions and, it also allowed Mr. Mendoza’s daughter to translate if there was something Mr. Mendoza did not understand.
I would find that Judge Darensburg was not manifestly erroneous in concluding that this plea failed constitutionally because the original trial court did not adequately test Mr. Mendoza’s English fluen *305 cy.[7] On the 1997 plea, the trial court judge acknowledged Mr. Mendoza’s fluency problem because he instructed Mr. Mendoza’s daughter to interpret as necessary. Because that trial court judge found that an interpreter was necessary, that judge was required to follow the legal requirements as to interpreters.
For a defendant without the required English fluency to validly waive his or her Boykin rights, such defendant must have an interpreter who will both interpret the proceedings into the defendant’s native tongue and make a true translation of each of the defendant’s statements. Id. This interpreter “should be a neutral and detached individual whose abilities are first screened by the court and who is sworn to make a true, literal and complete bilateral translation.” State v. Tamez, 506 So.2d 531, 533 (La.App. 1 Cir.1987).
In Louisiana, an interpreter is an expert whose testimony is governed by the Code of Evidence. “An interpreter is subject to the provisions of [the Louisiana Code of Evidence] relating to qualification as an expert and the administration of an oath or affirmation that he will make a true translation.” La. C.E. art. 604. A trial judge must qualify an interpreter as an expert “by knowledge, skill, experience, training, or education.... ” La. C.E. art. 702. The trial court in the 1997 proceeding failed to abide by this mandate of the Code of Evidence. Judge Darensburg may have based her finding that Mr. |7Mendoza did not validly waive his Boykin rights in the 1997 proceeding based on his interpreter’s failure to meet the required standard, and the unreliability which that caused.
In the 1997 proceedings, Mr. Mendoza’s daughter interpreted for him. Although such relationship between a defendant and an interpreter does not per se make an interpretation lacking, such an interpreter is unlikely to be neutral and detached. Further, the record does not show any inquiry by the court into Mr. Mendoza’s daughter’s competency or expertise as an interpreter. This failure left the trial court in this matter, and this Court, without any basis to determine whether Mr. Mendoza’s daughter had the competency required to act as her father’s interpreter. Additionally, the transcript of the 1997 proceedings indicates that Mr. Mendoza’s daughter did not make a true, literal, and complete bilateral translation of the statements made in court and those of Mr. Mendoza. Rather, the transcript reflects that the trial judge decided to question Mr. Mendoza directly and to use his daughter as an interpreter if Mr. Mendoza indicated that he did not understand a particular question. Mr. Mendoza answered the court’s questions with either a “yes” or a “no” or by nodding his head. Multiple times after these answers however, Mr. Mendoza’s daughter also testified on her own behalf. She testified about Mr. Mendoza’s ability to read and write English, what he understood, and what she had interpreted to him. This was an improper colloquy. If the trial judge in the 1997 proceedings found that Mr. Mendoza did not have the English fluency that he needed to validly waive his constitutional rights, the trial judge should have qualified an expert interpreter and ordered that interpreter to both translate word for word |Rto Mr. Mendoza each of the state *306 ments made in the court and as translate into English each of Mr. Mendoza’s statements.[8]
In the 1999 proceedings, a single handwritten minute entry indicates that “Felix Reyes” acted as Mr. Mendoza’s interpreter. Again however, there is no evidence that the trial court either screened Mr. Reyes for competency or otherwise qualified him as an expert. Further, the trial court may have also based its finding that Mr. Mendoza’s 1999 plea was constitutionally unreliable and invalid upon the fact that there is no evidence that the court swore Mr. Reyes to make a true, literal, and complete bilateral translation. Nor is there any evidence that Mr. Reyes made such a translation.
The trial court judges in the 1997 and 1999 proceedings failed to abide by our Code of Evidence and failed to determine whether Mr. Mendoza’s interpreters were competent. I would find that Judge Dar-ensburg did not manifestly err when she determined that Mr. Mendoza’s 1997 and 1999 convictions were unconstitutionally obtained in that the transcripts of those proceedings were not “perfect” and that the transcripts were inadequate to prove that Mr. Mendoza’s pleas in 1997 and 1999 were knowingly and intelligently made.

. The State bears this initial burden regardless of whether defendant challenges the constitutionality of his predicate guilty plea or pleas. The State must prove beyond a reasonable doubt the existence of prior guilty pleas, while represented by counsel, of the defendant currently before the court.

. La.C.Cr.P. art. 25.1 states in relevant part, “[i]f a non-English-speaking person who is a principal party in interest or a witness in a proceeding before the court has requested an interpreter, a judge shall appoint, after consultation with the non-English-speaking person or his attorney, a competent interpreter to interpret or to translate the proceedings to him and to interpret or translate his testimony." Although this article was not yet enacted at the time of the events in question in this appeal, this article is instructive because it codifies previous law.

. State v. Koch did not abrogate the quoted suggestion, Koch simply recognized that the United States Supreme Court in Griffith v. Kentucky, 479 U.S. 314, 107 S.Ct 708, 93 L.Ed.2d 649 (1987) had established a different criteria than was used in Neave for determining whether a rule of criminal procedure was retroactive.

. See, e.g., People v. Lopez, 114 IlI.App.3d 1018, 70 Ill.Dec. 580, 449 N.E.2d 927, 934 (1983); Gonzalez v. Virgin Islands, 109 F.2d 215, 217 (3rd Cir.1940).

. The court in Seiortino v. Seiortino, 99-3117 (La.App. 4 Cir. 11/8/00), 773 So.2d 240, 246, held that the trial court did not abuse its discretion in denying a civil litigant's request for a translator when that litigant alleged that English was not her first language and that she became confused when she answered questions at trial. The court noted that the Iitigant had: previously testified in a trial without the use of a translator without any problems; worked in the family business; ran a company’s computer department; owned and operated a pet store; worked as a DJ; and held a political office in the Edwards’ administration.

In this civil case, this Court stated that, "[i]f a litigant cannot fully understand or read and write the English language, he is entitled to an interpreter.”

. When a party appears to have a limited ability to communicate in English, the court should conduct a brief voir dire to determine the extent of the disability. Such a voir dire should avoid questions that can be appropriately answered with “yes” or "no.” The voir dire should include “wh-questions" (what, where, who, when) and questions that call for describing people, places, events, or a narration. Judge William J. Burris, The Impact of Language Barriers to Access to Justice, April-May 2009, 56 La. BJ. 416.

. The transcript of the 1997 proceedings indicates the following exchange between the trial court and the interpreter:
Court: He understands the statutes and the penalties?
Interpreter: He understands the penalties, yes.
Court: I was addressing that to Mr. Mendoza.
Unfortunately, the trial court then moved on to its next question and never received an answer from Mr. Mendoza himself or from Mr. Mendoza’s interpreter translating a Mr. Mendoza's statement. This was improper.