FIRST DIVISION

No. 1-06-0833

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 01 CR 20437 |
| | ) | |
| TERRANCE JOHNSON | ) | Honorable |
| | ) | Preston L. Bowie, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE ROBERT E. GORDON delivered the opinion of the court:

On September 23, 2005, a jury found defendant Terrance Johnson guilty of both the first-degree murder of Zhontele Payne and the aggravated battery with a firearm of James Williams; and the jury also acquitted defendant of the attempted murder of Williams. The charges arose out of a drive-by shooting on July 18, 2001 involving rival gangs. On March 2, 2006, the trial court sentenced defendant to consecutive terms of 45 years for the murder and 6 years for the aggravated battery.

On appeal, defendant makes six claims: (1) the trial court erred in failing to suppress defendant's pretrial confession on right to counsel grounds; (2) the trial court erred by barring a prior defense attorney from testifying at trial about defendant's claimed assertion of his right to counsel; (3) defense counsel was ineffective at trial; (4) the prosecutor committed error in his

rebuttal closing; (5) the trial court erred by admitting both the written statement and the grand jury testimony of the aggravated battery victim, who recanted at trial; and (6) the mittimus must be corrected because it stated that defendant spent 1,657 days in custody, when he actually spent 1,687 days.   For the reasons stated below, we affirm the conviction.  However, the mittimus must be corrected.

BACKGROUND

In the evening of July 18, 2001, Zhontele Payne and James Williams were shot in a drive-by shooting, near Maypole and Leclaire Streets in Chicago.  Payne later died, and Williams sustained injuries. On August 27, 2001, a grand jury indicted defendant Terrance Johnson for Payne's murder and Williams' battery.

Before trial, defendant filed a motion on May 13, 2002 to quash his arrest due to lack of probable cause and to suppress any evidence obtained as a result of the  arrest.  That motion was heard on July 16, 2002, and denied.  On September 25, 2002, defendant moved to suppress his videotaped confession based on his claim that he asserted  his right to counsel in the presence of his attorney.  Since his lawyer was a potential witness, the State filed a motion to disqualify his lawyer which was granted and defendant obtained new counsel.  On March 16, 2004, the trial court denied defendant's motion to suppress the confession.

On September 20, 2005, the jury trial began.  In its case in chief, the State called Annie Payne,  mother of the murder victim, who testified that she had identified her son's body; and Larry Porter, who testified that he observed a blue van pull up next to the victim's auto, that a gun protruded from the van window and fired, and that he identified the van.

The State's next witness was James Williams, the aggravated battery victim. Although Williams had provided prior to trial both a written statement and grand jury testimony, at trial he recanted his prior identification of defendant as the shooter. At trial, Williams identified the written statement and his signature on every page of it, and he testified that he recalled testifying in front of the grand jury.

At trial, Williams testified that, in the evening of July 18, 2001, prior to 7 p.m., he was in the front passenger seat of an automobile, with Roderick Young in the driver's seat and Zhontele Payne in the backseat, and they were "about to go to Great America"; that Young parked the vehicle at Maypole and Leclair Streets and exited; that another vehicle pulled alongside and shots were fired from the second vehicle; and that he was shot in the leg.

However, at trial, Williams testified that he did not see the shooter. He answered "I don't recall" when asked whether he had previously stated in his written statement and before the grand jury that he saw defendant shooting a gun out the window of a blue minivan that had pulled up alongside their vehicle. At trial, Williams testified: "I didn't see no van. I didn't see nothing."

At trial, Williams testified that sometime shortly after he was released from the hospital, police detectives drove him down LeClaire Street, but he denied having pointed out defendant at that time. When asked whether he had stated to Assistant State's Attorney (ASA) Elisabeth Bauer Kent and before the grand jury that he had pointed out defendant to police detectives as defendant stood on LeClaire Street, Williams answered "I don't recall."

At trial, Williams denied belonging to a gang. He also testified that he did not recall

3

having told both ASA Bauer Kent and the grand jury that he was a member of a gang called the Mafia Insane Vice Lords and that defendant was a member of a gang called the Four Corner Hustlers.

The State then called ASA Thomas Driscoll, who had presented Williams to the grand jury and who read Williams' grand jury testimony to the trial jury. The State also called Detective Richard Milz, who had arrested defendant; Brian Smith and Leah Kane, a forensic investigator and scientist, respectively; and ASA Elizabeth Bauer Kent, who handwrote a statement signed by Williams and who asked questions during defendant's videotaped confession. Williams' written statement was read to the jury, and the videotape of defendant's confession was played for the jury. The State also introduced a stipulation that if Dr. Barry Lifschultz, a forensic pathologist, were called to testify, he would testify that Payne died from gunshot wounds.

After the State rested, the defense called to the stand Amber Montgomery, defendant's former girlfriend, who testified that defendant was with her during the night of the shooting and did not leave her house until approximately 2:30 a.m. on July 19, 2001. Defendant testified that he was with his then-girlfriend until approximately 2 a.m., that his videotaped confession was coerced, and that he was the owner of the blue van previously identified by state witness Larry Porter.

In rebuttal, the State called Detective Raymond Schalk, who testified that defendant's former girlfriend told him that defendant had left her house at 10 p.m. on the night of the shooting. The State also recalled ASA Elizabeth Bauer Kent who testified that defendant did not

4

ask for an attorney and did not complain of any mistreatment prior to his confession; and Detective Milz, who also rebutted defendant's claims of coercion.

As previously noted, the jury convicted defendant of the first-degree murder of Payne and the aggravated battery of Williams, and acquitted defendant of the attempted murder of Williams. Defense counsel filed a motion for a new trial, and defendant filed a pro se motion for ineffective assistance of counsel. Both motions were denied. At sentencing, the trial court stated that it was sentencing defendant to the minimum sentence, which was 45 years' incarceration for the first-degree murder charge, and a consecutive 6-year sentence for the aggravated battery charge. Defendant's motion to reconsider was denied, and this appeal followed.

ANALYSIS

On appeal, defendant makes six claims: (1) the trial court erred in failing to suppress defendant's pretrial confession on right-to-counsel grounds; (2) the trial court erred by barring a prior defense attorney from testifying at trial about defendant's claimed assertion of his right to counsel; (3) defense counsel was ineffective at trial; (4) the prosecutor committed error in his rebuttal closing; (5) the trial court erred by admitting both the written statement and the grand jury testimony of the aggravated battery victim, who recanted at trial; and (6) the mittimus must be corrected because it stated that defendant spent 1,657 days in custody, when he actually spent 1,687 days.

1. Right to Counsel

Defendant claims that the trial court erred in denying his motion to suppress his videotaped confession. At a suppression hearing, defendant's prior counsel testified that, at the

5

police station and in his presence, defendant invoked his right to counsel. Defendant moved to suppress on the ground that the police subsequently obtained his confession in violation of this asserted right. After a hearing, the trial court denied the motion, finding that the State had showed that the defense attorney had not, in fact, visited defendant at the police station. On appeal, defendant claims that this factual finding by the trial court was against the manifest weight of the evidence.

Our standard of review is bifurcated, with an "against the manifest weight" standard for the trial court's factual findings, and a "<u>de novo</u>" standard for the ultimate question of whether the evidence should have been suppressed. <u>People v. Pitman</u>, 211 Ill. 2d 502, 512 (2004); <u>People v. Gipson</u>, 203 Ill. 2d 298, 303-04 (2003). As our supreme court has previously explained, "[o]n review of a trial court's ruling on a motion to suppress, we accord great deference to the trial court's factual findings, and we will reverse those findings only if they are against the manifest weight of the evidence." <u>Gipson</u>, 203 Ill. 2d at 303; see also <u>Pitman</u>, 211 Ill. 2d at 512. "This deferential standard of review is grounded in the reality that the circuit court is in a superior position to determine and weigh the credibility of the witnesses, observe the witnesses' demeanor, and resolve conflicts in their testimony. <u>Pitman</u>, 211 Ill. 2d at 512. However, when it comes to applying the law to the facts, the trial court's vantage point is not any superior to that of the reviewing court.

Defendant's suppression motion is based on one's fifth amendment right to counsel. Defendant's sixth amendment right to counsel was not applicable, because that right "attaches only at the initiation of adversary criminal proceedings." <u>Davis v. United States</u>, 512 U.S. 452,

456, 128 L. Ed.2d 362, 369-70, 114 S.Ct. 2350, 2354 (1994). However, in Miranda v. Arizona, 384 U.S. 436, 469-473, 16 L. Ed.2d 694, 720-23, 86 S. Ct. 1602, 1625-27 (1966), the United States Supreme Court held that a suspect who was subject to custodial interrogation had the right to consult with an attorney. Davis, 512 U.S. at 457, 128 L. Ed.2d at 370, 114 S.Ct. At 2354 (discussing Miranda). In Edwards v. Arizona, 451 U.S. 477, 484-85, 68 L. Ed.2d 378, 386, 101 S. Ct. 1880, 1884-85 (1981), the United States Supreme Court further held that a suspect who had invoked this right to counsel could not be subject to further questioning, unless an attorney was made available or the suspect initiated the conversation. Davis, 512 U.S. at 458, 129 L. Ed.2d at 370, 114 S. Ct. at 2354-55 (discussing Edwards). The Edwards rule is not required by the fifth amendment itself, but is part of Miranda's "prophylactic purpose." Davis, 512 U.S. at 458, 129 L Ed.2d at 371, 114 S. Ct. at 2355..

It is the Edwards rule that defendant claims protected him against interrogation and invalidated his confession. But the right to counsel must be clearly and unequivocally invoked by the defendant before the protections of the Edwards rule come into force. Davis, 512 U.S. at 458, 129 L. Ed.2d at 371, 114 S. Ct. at 2355. As the United States Supreme Court observed in Davis, "[t]he applicability of the ' "rigid" ' prophylactic rule' of Edwards requires courts to determine whether the accused actually invoked his right to counsel [Citation]." (Emphasis in original,) Davis, 512 U.S. at 459, 129 L. Ed.2d at 371, 114 S. Ct. at 2355.

While the United States Supreme Court held in Davis that a defendant's "assertion" of his right to counsel must be "clear" and unambiguous, the court did not state who bore the burden at a suppression hearing of proving that such an assertion had, in fact, occurred. Davis, 512 U.S. at

459, 129 L. Ed.2nd at 371, 114 S. Ct. at 2355.

With respect to a <u>Miranda</u> waiver, as opposed to an <u>Edwards</u> assertion, the burdens of proof are well established. The State bears the burden of proving, by a preponderance of the evidence, that the defendant made a knowing, intelligent and voluntary waiver of his or her <u>Miranda</u> rights. <u>People v. Reid</u>, 136 Ill. 2d 27, 51 (1990); see also <u>People v. Braggs</u>, 209 Ill. 2d 492, 505 (2004). "Once the State has established its <u>prima</u> <u>facie</u> case, the burden shifts to defendant to show that his [Miranda] waiver was not knowing, intelligent or voluntary." <u>Reid</u>, 136 Ill. 2d at 51. Since the <u>Edwards</u> rule is part of <u>Miranda</u>'s prophylactic purpose, it makes sense to apply the same burden-shifting scheme here, which the trial court did.

In the case at bar, the State presented evidence that defendant had waived his <u>Miranda</u> rights through testimony by the detective and the assistant State's Attorney who were present. Defendant then offered evidence that before the videotaped confession took place, he had asserted his right to counsel. The only witness who testified to this alleged assertion was defendant's prior attorney.[1]

---

[1]Although defendant did not testify at the suppression hearing, he later testified at trial. But he did not testify that he asserted his right to counsel in his attorney's presence. Defendant testified about his attorney's visit to the police station: "Then eventually, a lawyer showed up, talked to me, let me use the phone, call my mother and he told me not to talk and then, then he left." Defendant testified that he asserted his right to counsel later, when he met with an assistant state's attorney. He testified: "I told her that I wanted my lawyer there when I talked and she

8

The attorney testified that, after he arrived at the police station, he walked straight upstairs to the detective division without first stopping in the downstairs lobby, and that a detective took and made copies of his Attorney Registration and Disciplinary Committee card and sheriff's identification cards. Concerning the defendant's claimed assertion, the attorney testified that at the end of his meeting with defendant, he stated to a detective that his client was invoking his right to counsel; and defendant agreed with him.

Specifically, the attorney testified: "At that point I told the detective that I wanted to inform him once again and just make clear I was the attorney for Terrance Johnson. He was asserting his right to remain silent, his right to counsel and wouldn't say anything further unless I was there. And I said 'Isn't that right, Terrance?' And he says 'Yes.'"

In rebuttal, the State called Commander Frank Cappatell, who was a commander with the University of Illinois police department at the time of the hearing. Cappatelli testified that on July 19, 2001, he was a Chicago police detective sergeant and the acting homicide coordinator whose duties included checking in any attorney who came to visit a murder suspect in custody. Based on a review of his records from July 19 and 20, 2001, he testified that he did not have any contact with this attorney.

The trial court's ruling on the motion to suppress is quoted in full, below:

> "I like to believe that attorneys are telling the truth, being
>
> officers of the Court. I also have to go by the evidence presented

---

waved me off."

9

which I think the State has done an excellent job in meeting their burden and I think that the Defense just doesn't have – I heard a lot of explanations and excuses, but I have to go by the facts and I find that the Defendant has not met their burden that the State has shifted.

Talk about Mr. Capatelli who's the Commander, in looking back at his notes he did say he never had any contact with an attorney that evening and he gave details as to the protocol that must be followed and said this is always followed. Certainly attorneys are suppose[d] to stop at the front desk and there was testimony that sometimes they can go upstairs, but that's not the correct protocol. And I guess what bothers me most is that once the statement was taken and [the attorney] found out that a statement had been made after stating that he was at the station, told the officers the Defendant is invoking his right to remain silent, that he did not go back to the police station with the detective names, write a complaint, or just to do something, there's no indication on the Court file. The evidence presented by the Defense is extremely weak in this case.

So, motion to suppress statement is denied."

The heart of the above-quoted suppression ruling was a credibility determination, pure

10

and simple. Although the trial judge stated that he "like[d] to believe that attorneys are telling the truth," he could not make that finding about defendant's attorney. This court owes great deference to a trial court's credibility determinations. People v. Griggs, 152 Ill. 2d 1, 29 (1992) (court "decline[d] to disturb" trial court's finding that detectives were more credible than defendant on the issue of whether defendant had asked for an attorney); People v. Matthews, 306 Ill. App. 3d 472, 483 (1999) (same). In addition, the trial court stated that the defense attorney's testimony was called into question by both Commander Capatelli's testimony and defense attorney's own failure to protest once he discovered that a statement had been taken, in violation of his client's alleged assertion. We cannot find that the trial court's credibility finding was against the manifest weight of the evidence.

Defendant claims that our holding in People v. Anderson, 303 Ill. App. 3d 1050 (1999), compels reversal. In Anderson, the trial court found that defendant had not invoked his right to counsel, and this court held that the trial court's finding was against the manifest weight of the evidence. Anderson, 303 Ill. App. 3d at 1055-57. At the suppression hearing in Anderson, police detectives testified that defendant had met with two assistant State's Attorneys, and defendant testified that he had invoked his right when meeting with these two assistant State's Attorneys. Anderson, 303 Ill. App. 3d at 1052-53. Unlike the trial court, the reviewing court accepted "the defendant's testimony as true" because the State failed to call in rebuttal either of the two known assistant State's Attorneys. Anderson, 303 Ill. App. 3d at 1056-57. By contrast, in the case at bar, the one detective who allegedly witnessed defendant's assertion was not known, and approximately 25 detectives were on duty. Since the facts of Anderson are readily

11

distinguishable from the facts at bar, <u>Anderson</u> does not compel us to reach a different conclusion.

Defendant also relies on <u>People v. Bavas</u>, 251 Ill. App. 3d 720 (1993), which bears little relation to the case at bar. In <u>Bavas</u>, the trial court granted the State's motion for a directed finding, with respect to defendant's petition to rescind the statutory summary suspension of his driver's license. <u>Bavas</u>, 251 Ill. App. 3d at 721. At the hearing, the arresting officer did not testify. <u>Bavas</u>, 251 Ill. App. 3d at 721. The only two witnesses, who testified were defendant who testified that he was not intoxicated when he left the pub, and the bartender, who corroborated defendant's testimony. <u>Bavas</u>, 251 Ill. App. 3d at 721-22. The appellate court held that the trial court's finding for the State was against the manifest weight of the evidence. <u>Bavas</u>, 251 Ill. App. 3d at 725. The facts of <u>Bavas</u> are distinguishable from the facts at hand. First, in <u>Bavas</u>, the testimony about defendant's conduct was corroborated by an independent witness; in the case at bar, the attorney's testimony about defendant's conduct was not corroborated. Second, in <u>Bavas</u>, the police officer was known to the State, but failed to appear. <u>Bavas</u>, 251 Ill. App. 3d at 721. Since both <u>Anderson</u> and <u>Bavas</u> are distinguishable, neither opinion compels a reversal in this case, and we affirm the trial court's suppression ruling.

2. Limitation of Attorney's Testimony

On appeal, defendant claims that the trial court erred by allegedly barring his prior counsel from testifying at trial about defendant's alleged assertion of his right to counsel. On appeal, defendant claims that this evidence was relevant to show that defendant's will was overborne and thus his confession was false.

12

At first, the State moved to bar the prior defense attorney's testimony, and the trial court ruled: "That objection will be sustained until and unless the defendant testifies prior to [the attorney] taking the stand." Defendant then testified.

After defendant's testimony, the State moved to bar his prior attorney from testifying on relevance grounds. Defendant had <u>not</u> testified that he asserted his right to counsel to a detective in counsel's presence. Instead, defendant testified that he asserted his right to the assistant's State's Attorney. Thus, the State argued that there was no relevance to the attorney's testimony concerning an alleged assertion to a detective in the attorney's presence.

Defense counsel responded: "[Defendant] testified his lawyer came and he talked to his lawyer and that's what the lawyers [sic] is coming in to testify to." Defense counsel explained the purpose of this proposed testimony: "It corroborates the fact he's locked up in a room at the very least. It corroborates the defendant had a visit with his attorney."

The trial court then observed that if the defense was offering the attorney's testimony for the purpose of showing defendant was locked in a room, the testimony was cumulative:

"THE COURT: Everybody said he was locked in a room.

The detective said he was locked in a room, the defendant said that,

the State's Attorney said he was locked in a room. I mean, it's

cumulative."

Defense counsel then responded that the attorney's testimony was relevant because defendant "testified on the stand that he knew he wasn't going home despite the fact his lawyer is there" and that "he still wasn't going to go home until he cooperated."

13

At first, the trial court stated that it "was going to deny [the attorney's] testimony." Defense counsel then asked if he could at least "get in the fact that [the attorney] went to the police station." The trial court responded: "You're going to put him on to say, did you go to the police station and talk to your client?" Defense counsel answered:

> "Yes, at the very least, we should be allowed to do that without even getting in the conversation. Make sure there is no treading on any legal issues."

The trial court's final ruling emerged from the following colloquy among the assistant State's Attorney, defense counsel and the trial court:

> "MR. LEAFBLAD [Assistant State's Attorney]: Judge, you know, if that's all they're going to put on, we can't get into any conversations at all, Judge. I mean, this is irrelevant grounds.
>
> MR. CHRISTIANSEN [Defense Counsel]: You know, if that's the ruling, we need to put him on at the very least to say he went to the police station and talked to the client, talked to his client at some point. Whatever time he said he's going to be there. At the very least, I mean.
>
> THE COURT: All right.
>
> MR. CHRISTIANSEN: We won't even get to any conversation that they had.
>
> MR. LEAFBLAD: If it's just for the matter of the purpose

of whether he claims he went to the Area five that day, and met

with his client, that's it. I mean that's as far as it goes.

THE COURT: That's fine."

After the trial court had already said "[a]ll right," defense counsel volunteered that he would not

"get to any conversation that they had."

During this entire sidebar, defense counsel never once stated that he wanted to call the

attorney <u>for the purpose</u> of testifying about defendant's alleged assertion of his right to counsel.

As a result, this issue is waived on appeal. The Illinois Supreme Court has held that a "defendant

must both specifically object at trial and raise the specific issue again in a posttrial motion to

preserve an alleged error for review." <u>People v. Woods</u>, 214 Ill. 2d 455, 470 (2005); <u>People v.</u>

<u>Piatkowski</u>, 225 Ill. 2d 551, 564 (2007).

When a defendant has failed to preserve an error for review, an appellate court may still

review for plain error. "[T]he plain error doctrine allows a reviewing court to consider an

unpreserved error when (1) a clear or obvious error occurs and the evidence is so closely

balanced that the error alone threaten[s] to tip the scales of justice against the defendant,

regardless of the seriousness of the error, or (2) a clear or obvious error occurs and that error is so

serious that it affected the fairness of the defendant's trial and challenged the integrity of the

judicial process, regardless of the closeness of the evidence." <u>Piatkowski</u>, 225 Ill. 2d at 565;

<u>Woods</u>, 214 Ill. 2d at 471. With plain error analysis, "it is the defendant who bears the burden of

persuasion with respect to prejudice." <u>Woods</u>, 214 Ill. 2d at 471. However, in order to find

plain error, we must first find that the trial court committed an error. <u>Piatkowski</u>, 225 Ill. 2d at

15

565 ("the first step is to determine whether error occurred").

We apply this plain error review to an issue that already carries an abuse of discretion standard. "Generally, evidentiary rulings are within the sound discretion of the trial court and will not be reversed unless the trial court abused that discretion." People v. Purcell, 364 Ill. App. 3d 283, 293 (2006). Specifically, the appellate court has applied an abuse of discretion standard to this exact same issue, namely, a trial court's decision to restrict testimony regarding a defendant's assertion of his right to counsel. People v. Jackson, 303 Ill. App. 3d 583, 587 (1999). An abuse of discretion occurs "only where the ruling is arbitrary, fanciful, or unreasonable, or where no reasonable person would take the view adopted by the trial court." Purcell, 364 Ill. App. 3d at 293. Even if a trial court abused its discretion by unduly restricting testimony about the circumstances of a defendant's confession, a new trial is not required if the error was harmless. Jackson, 303 Ill. App. 3d at 587.

In the case at bar, it is hard to see how the trial court committed any error or the defendant suffered any prejudice from his attorney's failure to testify about the alleged assertion, when this testimony would not have corroborated defendant's trial testimony. In fact, one could argue that it would have conflicted with defendant's own description of his lawyer's visit. In describing the visit, defendant testified that his lawyer told him not to talk, but defendant did not claim that he or his attorney relayed this sentiment to anyone else. Defendant testified repeatedly that he did assert his right to counsel, but only to the assistant State's Attorney, at a time when his counsel was not present. It is impossible to see how noncorroborative and possibly conflicting testimony by his own attorney would have been relevant to defendant's case.

16

The attorney was allowed to testify, and did in fact testify, to the point that corroborated defendant's trial testimony, namely that the attorney did, in fact, visit and talk with defendant at the police station.

The facts of our case are distinguishable from Jackson, where the appellate court found that the trial committed error, albeit harmless error, by restricting testimony about defendant's assertion of his right to counsel. Jackson, 303 Ill. App. 3d at 587. In Jackson, defendant testified at trial that he repeatedly asserted his right to counsel to police officers, but the trial court precluded the officer who took defendant's statement from testifying about whether defendant had shown him his attorney's business card, and also barred the defense from introducing the business card that had been on defendant's person while defendant was in custody. Jackson, 303 Ill. App. 3d at 586. The facts of Jackson are distinguishable from the facts in the case at bar, because in Jackson the excluded evidence corroborated defendant's trial testimony, whereas in our case it did not.

Because we find that evidence about the assertion was properly excluded on relevance grounds, we do not reach the question of whether it would have also been barred on hearsay grounds. People v. Moss, 205 Ill. 2d 139, 159 (2001). To testify about the assertion, the attorney would have had to testify about both his own prior consistent statement and the statement by defendant. At the suppression hearing, the attorney testified that defendant asserted his right to counsel by stating "[y]es," after the attorney informed a detective that defendant was asserting his right to counsel and then asked "[i]sn't that right, Terrance?" We do not rule on whether, even if these statements were relevant, they would still have been barred on hearsay grounds.

17

### 3. Ineffective Assistance of Counsel

Defendant's third claim is that his trial counsel was ineffective. The Illinois Supreme Court has held that, to determine whether a defendant was denied his or her right to effective assistance of counsel, an appellate court must apply the two-prong test set forth in Strickland v. Washington, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). People v. Colon, 225 Ill. 2d 125, 135 (2007), citing People v. Albanese, 104 Ill. 2d 504 (1984) (adopting Strickland). Under Strickland, a defendant must prove both that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. Colon, 225 Ill. 2d at 135; People v. Evans, 209 Ill. 2d 194, 219-20 (2004); Strickland, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.

Under the first prong of the Strickland test, the defendant must prove that his counsel's performance fell below an objective standard of reasonableness "under prevailing professional norms." Colon, 225 Ill. 2d at 135; Evans, 209 Ill. 2d at 220. Under the second prong, the defendant must show that, "but for" counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different. Colon, 225 Ill. 2d at 135; Evans, 209 Ill. 2d at 220. "[A] reasonable probability that the result would have been different is a probability sufficient to undermine confidence in the outcome – or put another way, that counsel's deficient performance rendered the result of the trial unreliable or fundamentally unfair." Evans, 209 Ill. 2d at 220; Colon, 225 Ill. 2d at 135. To prevail, the defendant must satisfy both prongs of the Strickland test. Colon, 225 Ill. 2d at 135; Evans, 209 Ill. 2d at 220. "That is, if an ineffective-assistance claim can be disposed of because the defendant suffered no

18

prejudice, we need not determine whether counsel's performance was deficient." People v. Graham, 206 Ill. 2d 465, 476 (2003).

Specifically, defendant claims his counsel was ineffective for failing to: (1) request Illinois Pattern Jury Instructions, Criminal, No. 3.06-3.07 (4th ed. 2000) (hereinafter IPI Criminal 4th No. 3.06-3.07; and (2) introduce evidence of defendant's mental health history. Both errors concern defendant's confession. The instruction directs the jury to evaluate the weight to give the confession; and defendant claims that knowledge of his mental health history would have affected the weight that the jury gave the confession.

Although the voluntariness and admissibility of a confession are determined by the trial judge alone, a defendant may still present evidence to the jury concerning the weight to be given to the confession. People v. Jefferson, 184 Ill. 2d 486, 498 (1998); People v. Cook, 33 Ill. 2d 363, 369-70 (1965). Section 114-11(f) of the Illinois Code of Criminal Procedure of 1963 provides in full:

> "The issue of the admissibility of the confession shall not
>
> be submitted to the jury. The circumstances surrounding the
>
> making of the confession may be submitted to the jury as bearing
>
> upon the credibility or the weight to be given to the confession."
>
> 725 ILCS 5/114-11 (f) (West 2006).

Thus, even though the trial judge in the case at bar ruled that the confession was admissible, defendant still had the right to argue to the jury that the confession was unreliable and untruthful and to present evidence to that effect. Jefferson, 184 Ill. 2d at 498; Cook, 33 Ill. 2d at 369-70.

19

See also People v. Mullen, 141 Ill. 2d 394, 403 (1990) ("jury is entitled to give little or no weight to a confession").

### a. Jury Instruction

The instruction at issue, IPI Criminal 4th No. 3.06 -3.07, directs a jury to consider the "circumstances" of the confession and to determine its "weight." It states in full:

> "You have before you evidence that the defendant made a statement relating to the offenses charged in the indictment. It is for you to determine [whether the defendant made the statement, and, if so,] what weight should be given to the statement. In determining the weight to be given to a statement, you should consider all of the circumstances under which it was made." IPI Criminal 4th No. 3.06-3.07.

On appeal, defendant concedes that the bracketed information should not have been given.

Defendant is correct that refusal to give IPI Criminal 4th 3.06-3.07 may constitute reversible error. For example, in Cook, our supreme court found that the trial court committed reversible error when the defense requested and the trial court refused to give an instruction similar to IPI Criminal 4th 3.06-07. Cook, 33 Ill. 2d at 369-70. The instruction in Cook was similar to IPI Criminal 4th 3.06-07 in that both instructions directed the jury to consider the circumstances surrounding the making of the statement, and to determine the weight that the statement warranted. Cook, 33 Ill. 2d at 369-70.

Defendant is also correct that failure to request a particular jury instruction may be grounds for finding ineffective assistance of counsel, if the instruction was so "critical" to the defense that its omission "den[ied] the right of the accused to a fair trial." People v. Pegram, 124 Ill. 2d 166, 174 (1988); People v. Pollards, 367 Ill. App. 3d 17, 23 (2006).

However, the omission of a particular instruction must be judged in light of the other instructions given. "Instructions should not be viewed in isolation, but should be considered as a whole." People v. Hester, 131 Ill. 2d 91 (1989). Jury instructions are evaluated in their entirety to determine whether they fairly, fully and comprehensively informed the jury of the relevant law. Schultz v. Northeast Illinois Regional Commuter R.R. Corp., 201 Ill. 2d 260, 273-74 (2002); People v. Watson, 342 Ill. App. 3d 1089, 1097 (2003).

In the case at bar, the trial court gave an instruction that was almost identical, word for word, to IPI Criminal 4th 3.06-3.07. With respect to a witness' prior inconsistent and videotaped statement, the trial court instructed the jury:

> "It is for you to determine what weight should be given to that statement. In determining the weight to be given to an earlier statement, you should consider all of the circumstances under which it was made."

See IPI Criminal 4th No. 3.11.

With the exception of the word "earlier," the above two sentences are the exact same, word for word, as the last two sentences of IPI Criminal 4th 3.06-3.07. IPI Criminal 4th 3.06-3.07 is three sentences long. The only sentence missing from the trial court's instruction is the first sentence

21

of IPI Criminal 4th 3.06-3.07 which states: "You have before you evidence that defendant made a statement relating to the offenses charged in the indictment."

The only question then is whether the jury would have understood that prior inconsistent videotaped statements of a witness included defendant's confession. We do not see why the jury would have failed to make the connection where defendant was a witness, his confessions were inconsistent with his trial testimony, and the confession was videotaped.

Since the trial court provided an almost identical instruction to IPI Criminal 4th 3.06-3.07 to the jury, we cannot find either that counsel's performance was deficient in failing to request it or that defendant suffered any prejudice. Colon, 225 Ill. 2d at 135 (to prove ineffective assistance of counsel, defendant must show a deficient performance by counsel and prejudice from that deficient performance); Evans, 209 Ill. 2d at 220 (same).

b. Defendant's Mental Health History

Defendant also claims that counsel was ineffective for failing to present, both at trial and at the suppression hearing, evidence of defendant's learning disability and depression, because this evidence would have aided the jury in determining whether defendant's will was overborne by the police when he gave his confession..

As discussed in section (1) above, the motion to suppress was based solely on prior counsel's testimony that defendant asserted his right to counsel. The trial court denied the motion simply because it found that prior counsel lacked credibility. Defendant's mental health history had no relevance, at all, in determining the credibility of another witness, namely prior counsel. Thus, the absence of mental health information at the suppression hearing was not error

by counsel and did not prejudice defendant. <u>Colon</u>, 225 Ill. 2d at 135; <u>Evans</u>, 209 Ill. 2d at 220.

On appeal, defendant cites the presentence report as evidence of his mental health history and claims that his trial counsel should have introduced evidence of the mental health information contained in it. The report noted that this information came from interviews with defendant and his mother. The report stated, in relevant part:

> "The Defendant attended Austin Community Academy High School, located in Chicago, Illinois form 1995 to 1999. He stated that he was placed at Forest Academy, a therapeutic day school, located in Chicago, Illinois where he attended from 1999 to 2001. He stated that he was placed at Forest Academy because he suffered from depression and needed assistance to keep up in school. ***
>
> The Defendant stated that he underwent counseling for depression on a daily basis while he was a student at Forest Academy from 1999 to 2001. *** The Defendant stated that he attempted suicide on one occasion when he was nineteen years of age in that he wrapped a shirt around his neck and was pulling on it. ***
>
> This Investigator conducted a telephone interview with an individual who identified herself as Imogene Johnson, the Defendant's mother, who stated that the Defendant was diagnosed

with depression and some kind of learning disability which made

him eligible for Social Security Disability benefits when he was

sixteen years of age."

On the basis of the presentence report, defendant claims that his trial counsel failed both to investigate and to call witnesses who could testify to the above-quoted information.

We cannot review this claim because defendant has failed to provide us with affidavits from the missing witnesses. He has failed even to name them. Our supreme court has held that "[a] claim that trial counsel failed to investigate and call a witness must be supported by an affidavit from the proposed witness." People v. Enis, 194 Ill. 2d 361, 380 (2000). The failure to provide affidavits is fatal to the claim, and our supreme court has explained why. "In the absence of such an affidavit, a reviewing court cannot determine whether the proposed witness could have provided testimony or information favorable to the defendant, and further review of the claim is unnecessary." Enis, 194 Ill. 2d at 380.

Even if we considered the presentence report in lieu of an affidavit and assumed that the proposed witnesses were the two people interviewed by the probation officer, namely, defendant and his mother, defendant has still failed to show trial counsel was deficient.

A decision whether or not to call a particular witness about a particular subject is a matter of trial strategy, left to the discretion of trial counsel. Enis, 194 Ill. 2d at 378; People v. Reid, 179 Ill. 2d 297, 310 (1997). This decision carries a strong presumption that it was the product of strategy rather than incompetence. Enis, 194 Ill. 2d at 378; People v. Ward, 371 Ill. App. 3d 382, 434 (2007). As a result, this type of decision is "generally immune from claims of ineffective

24

assistance of counsel."  Enis, 194 Ill. 2d at 378, 411 (counsel was not ineffective for failing to introduce evidence of defendant's neuropsychological impairment where it could "evoke[] compassion or demonstrate[] possible future dangerousness"); Reid, 179 Ill. 2d at 310, 312 ("counsel was not ineffective in failing to introduce at trial evidence of defendant's post-traumatic stress disorder").

In the case at bar, counsel's trial strategy was to persuade the jury to believe defendant's trial testimony,  by portraying defendant as an intelligent young man.  During closing, trial counsel argued to the jury:

> "The details are this: Terrance Johnson, you heard him.  He's in high school.  He works.  He's no dummy. *** So if he had just committed murder, think about what he's doing when the detectives pull up.  He goes over to the car after leaving his girlfriend's house *** and walks over to the detective's car *** to see what they want.  If he ever committed this murder, could you ever possibly imagine doing that?"

A reviewing court will not second-guess a counsel's trial strategy simply because defendant was convicted.

In addition, the "reasonableness" of counsel's decision not to present certain testimony "may be judged with reference to a defendant's own statements."  Enis, 194 Ill. 2d at 409-10. Counsel cannot be expected to present testimony that contradicts a defendant's own statements. Enis, 194 Ill. 2d at 410.

The presentence information, quoted above, contradicted, in part, defendant's trial testimony. At four different points in his trial testimony, defendant testified that in 2001 he attended or was enrolled at the Austin Community High School. By contrast, the probation officer reported in the presentence report that defendant stated that he had left Austin as early as 1999 and that he attended Forest Academy from 1999 until 2001, when he was arrested. Since the credibility of the defendant's trial testimony was a key issue for the jury to determine, trial counsel was not deficient for choosing not to present contradicting evidence.

In sum, we do not find counsel ineffective for choosing not to present mental health evidence, where: (1) the suppression motion was based solely on prior counsel's testimony that defendant asserted his right to counsel, and defendant's mental health was unrelated to the credibility of prior counsel; (2) defendant failed on appeal to provide affidavits from the proposed witnesses regarding defendant's mental health; (3) the mental health evidence ran counter to trial counsel's strategy of portraying defendant as an intelligent man; and (4) the proposed evidence would have contradicted, in part, defendant's trial testimony.

### 4. Prosecutor's Rebuttal Closing

Defendant's fourth claim is that the prosecutor's remarks during the prosecutor's rebuttal closing constituted reversible error.

It is not clear whether the appropriate standard of review for this issue is de novo or abuse of discretion. Last year, our supreme court held: "Whether statements made by a prosecutor at closing argument were so egregious that they warrant a new trial is a legal issue this court reviews de novo." Wheeler, 226 Ill. 2d at 121 . However, the supreme court in Wheeler cited

26

with approval People v. Blue, 189 Ill. 2d 99 (2000), in which the supreme court had previously

applied an abuse of discretion standard. Wheeler, 226 Ill. 2d at 121. In Blue and numerous other

cases, our supreme court had held that the substance and style of closing argument is within the

trial court's discretion, and will not be reversed absent an abuse of discretion. Blue, 189 Ill. 2d at

128, 132 ("we conclude that the trial court abused its discretion" by permitting certain

prosecutorial remarks in closing); People v. Caffey, 205 Ill. 2d 52, 128 (2001); People v.

Emerson, 189 Ill. 2d 436, 488 (2000); People v. Williams, 192 Ill. 2d 548, 583 (2000); People v.

Armstrong, 183 Ill. 2d 130, 145 (1998); People v. Byron, 164 Ill. 2d 279, 295 (1995). Our

supreme court had reasoned: "Because the trial court is in a better position than a reviewing

court to determine the prejudicial effect of any remarks, the scope of closing argument is within

the trial court's discretion." People v. Hudson, 157 Ill. 2d 401, 441 (1993). Following Blue

and other supreme court cases like it, this court had consistently applied an abuse of discretion

standard. People v Tolliver, 347 Ill. App. 3d 203, 224 (2004); People v. Abadia, 328 Ill. App.

3d 669, 678 (2001).

Since Wheeler, appellate courts have been divided regarding the appropriate standard of

review. The First District has applied an abuse of discretion standard, while the Third and Fourth

Districts have applied a de novo standard of review. Compare People v. Love, 377 Ill. App. 3d

306, 313 (1st Dist. 2007) and People v. Averett, 381 Ill. App. 3d 1001 (1st Dist. 2008), with

People v. McCoy, 378 Ill. App. 3d 954, 964 (3d Dist. 2008), and People v. Palmer, 889 N.E. 2d

244, 251 (4th Dist. 2008). However, we do not need to resolve the issue of the appropriate

standard of review at this time, because our holding in this case would be the same under either

standard.

In addition, we will review only for plain error, because defendant failed to preserve the alleged error by objecting at trial.[2] As noted above, to preserve an alleged error for review, a defendant must object both at trial and in a posttrial motion. Woods, 214 Ill. 2d at 470; Piatowski, 225 Ill. 2d at 564. Also as discussed above, under the plain error doctrine, we will consider "a clear or obvious error" where either the evidence is "closely balanced" or the error is "so serious that it affected the fairness of defendant's trial." Piatowski, 225 Ill. 2d at 565; Woods, 214 Ill. 2d at 471.

When reviewing claims of prosecutorial misconduct in closing argument, a reviewing court will consider the entire closing arguments of both the prosecutor and the defense attorney, in order to place the remarks in context. Wheeler, 226 Ill. 2d at 122; People v. Johnson, 208 Ill. 2d 53, 113 (2003); People v. Tolliver, 347 Ill. App. 3d 203, 224 (2004). A prosecutor has wide latitude during closing argument. Wheeler, 226 Ill. 2d at 123; Blue, 189 Ill. 2d at 127. Reversal is warranted only if the prosecutor's remarks created "substantial prejudice." Wheeler, 226 Ill. 2d at 123; Johnson, 208 Ill. 2d at 64; People v. Easley, 148 Ill. 2d 281, 332 (1992) ("The

---

[2]In his posttrial motion, defendant claimed that the "Assistant State's Attorney made prejudicial, inflammatory and erroneous statements in closing argument designed to arouse the prejudices and passions of the jury, thereby prejudicing the defendant's right to a fair trial." We do not have to rule whether this claim was sufficiently specific, because defendant failed to object at trial.

remarks by the prosecutor, while improper, do not amount to substantial prejudice"). Substantial prejudice occurs "if the improper remarks constituted a material factor in a defendant's conviction." Wheeler, 226 Ill. 2d at 123.

On appeal, defendant claims, "in closing rebuttal argument, the State argued that the reason Williams denied identifying Johnson was because he had been intimidated by Johnson." Defendant is correct in that a prosecutor may not suggest that a witness was afraid to testify because the defendant threatened or intimidated him, if no evidence at trial supports that argument. People v. Cox, 377 Ill. App. 3d 690 (2007); Mullen, 141 Ill. 2d at 405; People v. Sims, 285 Ill. App. 3d 598, 605 (1996).

However, in the case at bar, contrary to defendant's claim, the prosecutor did not argue that defendant intimidated a witness. Defendant cites the following portion of the State's rebuttal:

> "Let's talk about this James Williams character. Did we ever once try to pretend that James Williams when he came out of the back in his Cook County Jail uniform was anything more than the gangbanger that he is, the three-time convicted felon? Though at the time that this happened James Williams was only a two time convicted felon. All right?
>
> The reason why there's a handwritten statement, the reason why there's Grand Jury testimony is because the law recognizes guys like James Williams, the convicted felons, the gangbangers

29

after they get – you know, their wound heals, after they get over it, after they're sitting in Cook County Jail, you can just use your imagination what's going over there in Cook County Jail, is going to change his testimony, and there has to be some kind of method to hold a man like that responsible for what he did because gang crimes don't happen in front of nuns. They don't happen in front of teachers. They don't happen in front of people in society that we respect. They happen in front of other gangbangers who come to court and change their testimony. I mean did anybody find it curious the only thing that James Williams forgot was, well, that he is a gangbanger, that he's a gangbanger and who shot him? He remembered he was going to Great America that day. Come on. He knows who did the shooting.

You know who did the shooting too and that's because under the law you can take what he said in front of the Grand Jury, what he said in his Grand Jury testimony as substantive evidence. That's as if he got up there on that stand and said the very same things that he said to the Grand Jury, that he said in the handwritten. That's the law. You will get an instruction on that because the law recognizes guys like James Williams. Guys like James Williams aren't sitting in Cook County Jail writing love

> letters to Dick Devine. He is charged with attempt first degree
>
> murder himself. The Cook County State's Attorney's office is
>
> prosecuting him. We've convicted him of another felony since this
>
> thing happened. The Cook County State's Attorney's Office is no
>
> friend of James Williams as he sits in Cook County Jail."

At most, the defense could argue that, in the above-quoted statement, the State was arguing that there are "gangbangers" in Cook County jail, that cooperators are not popular among them, and that Williams was afraid of what would happen to him in jail as a result of cooperating. General comments about jail, or even the Cook County jail specifically, do not rise to the level of reversible error. People v. Sullivan, 366 Ill. App. 3d 770, 786 (2006) (no reversible error where prosecutor remarked that " 'jails throughout the United States are filled with people *** convicted of murder' "); People v. Jones, 240 Ill. App. 3d 1055, 1063 (1992) (no reversible error where prosecutor commented that the state was " 'not responsible for the conditions over at Cook County Jail' ").

On appeal, defense claimed that the above-quoted "Cook County jail" statement by the prosecutor clearly referred to intimidation by defendant and that the reference was as clear as the prosecutor's reference in Mullen, 141 Ill. 2d at 405. In Mullen, our supreme court held that the prosecutor's "statement clearly suggests that defendant threatened or intimidated witnesses so they would not testify against him." Mullen, 141 Ill. 2d at 405. The prosecutor in Mullen stated:

> " 'And when you consider that, remember perhaps one of
>
> the most powerful things in this case was when Tyrone Carr got up

on the stand the first time, and he said he did not want to answer.

And use your common sense why he did not want to answer. The same reason that no one wanted to talk, at first; they did not want to get involved.

Why don't they want to get involved? They do not want one of these (indicating) in their back. Is this going to be what runs the streets of the City of Chicago' " (Emphasis omitted.) Mullen, 141 Ill. 2d at 405.

 In Mullen, the prosecutor's remark about a gun "in their back" was a clear reference to defendant because the victim had been fatally shot in the back. Mullen, 141 Ill. 2d at 405. By contrast, in the case at bar, the prosecutor's remarks contained no distinguishing events or characteristics that could be tied specifically to defendant. Cox, 377 Ill. App. 3d at 708 (no reversible error where prosecutor's remarks "did not specifically attribute any fear on the part of [witnesses] to defendant").

On appeal, defendant claims that the prosecutor's reference was clear, because the prosecutor suggested that the witness was afraid of other inmates at the Cook County jail, and the prosecutor had asked defendant on cross examination if he knew people in custody at Cook County jail. However, when the "Cook County jail" statement is viewed in the context of the entire closings, it is clear that it referred generally to gang intimidation rather than to defendant specifically. Wheeler, 226 Ill. 2d at 122 (reviewing court will consider entire closing arguments). For example, the prosecutor remarked in his initial closing argument that James Williams made

32

his earlier statements "before he was back in custody with other people awaiting trial, when he's not with some of his gang member friends." See People v. Sims, 285 Ill. App. 3d 598, 605 (1996) (no reversible error where prosecutor commented in closing that "[the witness] is in the Illinois Department of Corrections. *** [A]nd yesterday, [the witness] came in here and said, I can't remember ***").

Thus, considering the contested statement both by itself and in context, we cannot find that the prosecutor suggested intimidation by defendant, as the defense now claims on appeal. As a result, defendant's claim of prosecutorial misconduct has no factual basis.

### 5. Repetitive Evidence

Defendant's fifth claim is that the trial court abused its discretion when it admitted repetitive evidence of the prior statements of James Williams, a State witness. Williams made two prior statements: (1) a statement handwritten by assistant State's Attorney Bauer Kent and signed by Williams; and (2) testimony before a grand jury. Defendant does not claim that admission of these two statements violated either the confrontation clause of the sixth amendment or the hearsay rule. Defendant concedes that the statements qualified under a well-established exception to the hearsay rule, namely, the exception for prior inconsistent statements. This exception is described in section 5/115-10.1 of the Illinois Code of Criminal Procedure of 1963, which states in relevant part:

> "In all criminal cases, evidence of a [prior inconsistent] statement
>
> made by a witness is not made inadmissible by the hearsay rule if:
>
> (a) the statement is inconsistent with his testimony at ***

33

trial, and

(b) the witness is subject to cross-examination concerning the statement; and

(c) the statement –

(1) was made under oath at a[n] *** other proceeding, or

(2) narrates, describes or explains an event or condition of which the witness had personal knowledge, and

(A) the statement is proved to have been written or signed by the witness[.]"  725 ILCS 5/115-10.1 (West 2006).

Williams' grand jury testimony qualified under section 5/115-10.1 because it was made under oath at an "other proceeding"; and the handwritten statement qualified because it described an event of which the witness had personal knowledge and Williams identified his signature on every page of the statement.  Thus, the hearsay rule is not at issue on appeal.

Defendant claims the error was the repetition.  Specifically, defendant claims the trial court erred by (1) by admitting both Williams' grand jury testimony and his prior written statement; (2) by permitting several witnesses to testify about the statements; and (3) by admitting the entire statements, although some parts were consistent with Williams' trial testimony.

As noted above, the admission of evidence is generally within the sound discretion of the

trial court, and this court will review only for an abuse of discretion. Purcell, 364 Ill. App. 3d at 293. In addition, we will review only for plain error, because defendant failed to preserve the alleged error for review. As noted above, to preserve an alleged error for review, a defendant must object both at trial and in a posttrial motion. Woods, 214 Ill. 2d at 470; Piatowski, 225 Ill. 2d at 564. Defendant did not object either at trial or in a posttrial motion.

On appeal, defendant claims that the repetition violated "the evidentiary rule" against "repetition of a prior consistent statement." The defense is confusing apples with oranges, or more specifically, inconsistent statements with consistent ones. The defense is absolutely right that there is a long-established evidentiary rule against admission of a prior consistent statement, unless there has been a charge of recent fabrication or a motive to testify falsely. People v. Emerson, 97 Ill. 2d 487, 501 (1983); People v. Montgomery, 254 Ill. App. 3d 782, 792 (1993); People v. Terry, 312 Ill. App. 3d 984, 995 (2000). However, at issue here are prior inconsistent statements, or statements inconsistent with the witness's trial testimony. People v. Harvey, 366 Ill. App. 3d 910, 913-15, 922 (2006) (evidence was not "cumulative" when trial court admitted as prior inconsistent statements both grand jury testimony and prior written statements for each witness).

Consistency is measured against a witness's trial testimony: inconsistent statements are inconsistent with trial testimony; consistent statements are consistent with it. Terry, 312 Ill. App. 3d at 995 (a witness's prior statement is "consistent" if it is "consistent with his trial testimony"); People v. Smith, 139 Ill. App. 3d 21, 32 (1985) (consistent means "harmonizing with his [trial] testimony"). The rule against admission of consistent statements exists because they needlessly

bolster the witness's trial testimony. Montgomery, 254 Ill. App. 3d at 792; Terry, 312 Ill. App. 3d at 995. Obviously, inconsistent statements cannot bolster a witness's trial testimony. Thus, application of the rule makes no sense here.

To the extent that we want to apply the underlying logic of the rule to the case at bar, the rule has an exception for recent fabrication, which is what the state was contending happened here. Emerson, 97 Ill. 2d at 501; Montgomery, 254 Ill. App. 3d at 792. Thus the rule cited by the defense, to the extent that we can stretch it to apply it to these facts, actually favors the state's argument.

Defendant also claims, in one line without any citation to the record, that "large portions of the prior statements were consistent with Williams' trial testimony." In essence, defendant claims, without citing any legal authority, that the trial court should have sua sponte redacted the statements. It is unnecessary for us to consider a point in an appellate brief that is unsupported by citation to legal authority or the factual record. This court has repeatedly held that a party waives a point by failing to argue it on appeal. Roiser v. Cascade Mountain, Inc., 367 Ill. App. 3d. 559, 568 (2006) (by failing to offer supporting legal authority or "any reasoned argument," plaintiffs waived consideration of their theory for asserting personal jurisdiction over defendants); People v. Ward, 215 Ill. 2d 317, 332 (2005) ("point raised in a brief but not supported by citation to relevant authority *** is therefore forfeited"); In re Marriage of Bates, 212 Ill. 2d 489, 517 (2004) ("A reviewing court is entitled to have issues clearly defined with relevant authority cited"); Ferguson v. Bill Berger Associates, Inc., 302 Ill. App. 3d 61, 78 (1998) ("it is not necessary to decide this question since the defendant has waived the issue" by failing

to offer case citation or other support as Supreme Court Rule 341 requires); 210 Ill. 2d R. 341 (h)(7) (argument in appellate brief must be supported by citation to legal authority and factual record).

For the reasons stated above, we find no merit in defendant's "repetition" claims.

### 6. Correction of Mittimus

Both the State and the defense agree that the mittimus must be corrected. The "Order of Commitment and Sentence" stated that defendant was entitled to receive credit for 1,657 days actually served as of March 2, 2006, the date of the order. However both the State and the defense agree that defendant had actually served 1,687 days as of that date. Accordingly, the order must be corrected to state that defendant is entitled to receive credit for 1,687 days served as of March 2, 2006. "Pursuant to Supreme Court Rule 615 (134 Ill. 2d R. 615), a reviewing court on appeal may correct the mittimus at any time, without remanding the cause to the trial court." People v. Jones, 371 Ill. App. 3d 303, 310 (2007).

### CONCLUSION

For the foregoing reasons, defendant's conviction and sentence are affirmed, and the mittimus is corrected to show that defendant is entitled to receive 1,687 days for time considered served.

Affirmed.

CAHILL and GARCIA, JJ., concur.

# REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT
## (Front Sheet to be attached to each Opinion)

| | |
|---|---|
| Please use the ]<br>following form: ] | |
| ] | **PEOPLE OF THE STATE OF ILLINOIS** |
| ] | **Plaintiff-Appellee,** |
| ] | **v.** |
| ] | **TERRANCE JOHNSON** |
| ] | **Defendant-Appellant.** |
| **Complete**<br>**TITLE**<br>**of Case.** ] | |

**Docket No.**  ]       **No.  1-06-0833**
]      **Appellate Court of Illinois**
**COURT**    ]      **First District, First Division**
]
]       **SEPTEMBER 08, 2008**
**Opinion Filed** ]       **(Month, Day and Year)**

**JUSTICES**     ] **PRESIDING JUSTICE ROBERT E. GORDON delivered**
] **the opinion of the court.**
]
] **CAHILL and GARCIA, JJ., concur.**
]

**APPEAL from the** ] Lower Court and Trial Judge(s) in form indicated
**Circuit Court** ] in margin:
**of Cook County;** ] Appeal from the Circuit Court of Cook County.
**the Hon:_____** ]
**Judge Presiding** ] Honorable   Preston L. Bowie, Judge Presiding.
]

**For APPELLANTS** ]Indicate if attorney represents APPELLANTS or
**John Doe of** ]APPELLEES and include attorneys of counsel.
**Chicago.** ]Indicate the word NONE if not represented.
**For APPELLEES,** ]--------------------------------------------------------------------------------
**Smith and** ]
**Smith, of** ]      **Office of the State Appellate Defender**
**Chicago.** ]      **Michael J. Pelletier - Deputy Defender**
**Brown,** ]      **Marion Buckley - Assistant Appellate Defender**
**of Counsel.** ]      **Chicago, Illinois   60601**
]      **Attorneys for Defendant-Appellant**
]

**Also add atty.**]
**for third party** ]      **State's Attorney of Cook County - Richard A. Devine**
**appellants** ]      **Chicago, Illinois 60602**
**or appellees.** ]      **Attorneys for Appellee**
]      **Attn: James E. Fitzgerald, Michelle Katz, Tasha-Marie Kelly**
]         **OF COUNSEL**
]
]

_____**(USE REVERSE SIDE IF NEEDED**_____